## MATILDA BENNETT et al. *vs.* BALTIMORE HUMANE IMPARTIAL SOCIETY AND AGED WOMEN'S AND AGED MEN'S HOMES, &c.— WILLIAM H. TURBUTT and SAMUEL TURBUTT *vs.* THE SAME.

*Creation of Trusts—Intention of Testator—Devise to Charitable Institution with a Proviso—Condition Subsequent Annexed to Devise.*

When property is given by will to a charitable institution, "provided" that the devisee shall do certain things, the word "provided" will not be held to create a trust as to the use of the property when it appears from the whole will that the testator did not intend to create a trust, and when if a trust should be established the entire gift would be defeated.

A testator devised the residue of his estate to the Aged Men's and Women's Homes "provided the managers of said homes admit and receive into said homes during their existence one aged man or one aged woman each and every year for each and every $400 of income to be derived from the property hereby devised * * said aged person so to be admitted shall not be required to pay any fee for admission and provided also that said aged person so to be admitted shall have always through life maintained a good moral character and that his or her penury shall not have been the result of his or her vicious or immoral conduct." The devisee was a charitable institution maintaining homes for aged persons, who were required to pay an admission fee. *Held,*

1st. That the will did not create a trust and that consequently the devise is not void because creating a trust with uncertainty as to the beneficiaries or because it creates a perpetuity.

2nd. That the devise is upon the condition subsequent, and the society takes the property given for its general corporate purposes subject to the condition.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City. As to appellee's charter, see the Act of 1890, ch. 290, entitled an Act to amend and reduce into one the several Acts relating to the incorporation of The President and Managers of the Baltimore Humane Impartial

Society and The Baltimore Humane Impartial Society and Aged Women's and Aged Men's Homes.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and JONES, JJ.

*Charles M. Kelly* and *Hyland P. Stewart* (with whom were *James McColgan* and *Richard D. Hyson* on the briefs), for the appellants.

It is clear that Mr. Turbutt did not intend the trustees of the Homes to use any part of the *corpus* of his estate, but his design was to keep his estate intact as a fund, and for the trustees to use the income from this fund toward admitting and receiving into the Homes the aged persons whom the testator has described. This is an analogous case to *Fosdick* v. *Town of Hempstead*, 125 N. Y. 584, where a testator gave one-half of his estate to the town of Hempstead, " to be kept as a fund for the support of the poor of said town, to be known as the Hewlett Fund ; " and it was held in this case that a trust was created and that the trust was void on account of the uncertainty of the persons to be benefited. See also *Cole* v. *Littlefield*, 35 Me. 439 ; *Cummings* v. *Corey*, 58 Mich. 484 ; *Wheeler* v. *Smith*, 9 Howard, 35 ; *Saylor* v. *Plaine*, 31 Md. 158 ; *Warner* v. *Bates*, 98 Mass. 274 ; 1 *Perry on Trusts*, 112 ; 2 *Story's Eq.*, 267, 466.

In order to ascertain whether a trust is created, LORD ELDON, in *Wright* v. *Atkyns*, 1 Turn. and Russell 157, lays down the following tests: 1st, the words must be imperative ; 2nd, the subject must be certain ; 3rd, the objects must be certain. Now, Mr. Turbutt practically tells the institution that unless they use the income from his estate as long as the Homes last for the benefit of the aged persons that he has indicated, and in the manner that he has described, then the Baltimore Humane Impartial Society cannot take his estate. Certainly the language used by Mr. Turbutt cannot be construed as a desire or as a request,

or as imposing upon the trustees and managers of the Homes a mere discretion. The language in its popular or technical meaning imposed an obligation and a command upon the devisee.

That the word "provided" may establish a trust there can be no question. In *Stanley* v. *Colt*, 5 Wallace, 166, a testator gave his estate to an ecclesiastical society; he then added certain clauses, beginning with the word "provided," and expressing his directions as to the application of the income. The Court held that the provisions fastened a trust upon the fund. See also *Woodruff* v. *Woodruff*, 44 N. J. Eq. 353; *Chapin* v. *Harris*, 8 Allen, 585; *Sohier* v. *Trinity Church*, 109 Mass. 1; *Episcopal Mission* v. *Appold*, 117 Mass. 326.

Mr. Turbutt was the draftsman of his will, the paper itself being in his own handwriting. He was not a lawyer, and it is fair to infer that he had little knowledge of legal terms, hence it would have been impossible for him to have expressed his ideas in legal phraseology. The mind of a layman has a very inadequate conception of the technical term "in trust," and there is every reason to believe that Mr. Turbutt's legal knowledge was not superior to that of the general run of the laymen. While Mr. Turbutt, then, did not use the words "in trust," it is clear from the language that he has used that he intended to create a trust for the benefit of the aged poor. *Harding* v. *Glen*, 1 Atk. 469; *Bernard* v. *Minshull*, 1 Johns, 276; *Warner* v. *Bates*, 98 Mass. 274; *Cummings* v. *Corey*, 58 Mich. 494; *Crissman* v. *Crissman*, 23 Mich. 217; *Ellis* v. *Secor*, 31 Mich. 186.

The trust created by Turbutt's will is void for uncertainty. The term "aged persons" is too indefinite to allow the enforcement of a trust, and expressions of such a kind have always been held by the Court of Appeals of Maryland to carry with them indefiniteness and to render uncertain the beneficiaries of a trust. Here are some of the expressions that have rendered the objects sufficiently uncertain to avoid the trusts. "Indigent and necessitous

poor persons." *Wilderman* v. *Mayor and City Council*, 8 Md. 551. "The real distressed private poor of Talbot County." *Trippe* v. *Frazier*, 4 H. & J. 347. "The poor children belonging to the congregation of St. Peter's Protestant Episcopal Church." *Dashiell* v. *Attorney-General*, 5 H. & J. 320. "The poor children of Caroline County who attend the poor or charity school established at Hillsborough." *Dashiell* v. *Attorney-General*, 6 H. & J. 1. "The needy poor of said church or congregation." *Yingling* v. *Miller*, 77 Md. 104.

*William A. Fisher* and *Leigh Bonsal* (with whom was *Edgar G. Miller, Jr.,* on the brief), for the appellee.

I. The appellee corporation exists for no other purpose than taking care of aged men and women. This is the only purpose specified in its charter. The appellee, acting through its Board of Trustees and Board of Lady Managers, has by resolutions definitely accepted the devise and bequest of the testator. With its considerable resources from invested funds, with its buildings and with its subscribers, the appellee definitely agrees to carry out the provisions of Mr. Turbutt's will. It will not be Mr. Turbutt's money alone, or his money to any great degree, that will constantly provide homes for five or six aged people. It will be the resources of the appellee, helped along by Mr. Turbutt's money, that will accomplish this beneficial result, for it is evident that no sufficient money under the will is given to the appellee by the disbursement of which these old people will be fed, clothed and housed for the rest of their lives. No attempt is made to provide for such a thing. Under the provisions of Mr. Turbutt's will an inmate is to be received into the Homes for each $400 of income received. No more than $400 is to be received for any inmate admitted, and as the inmate may live at the home for twenty years or more, it is clear that Mr. Turbutt's $400 would contribute very little to his support.

Mr. Turbutt desired that the aged men or women should

not be required to pay the admission fee of from $200 to $300, believing that deserving cases might be excluded from the Homes on account of not having the requisite money. Being informed that admission fees were necessary as a means of helping the other revenues of the Homes, Mr. Turbutt, as the testimony shows, after studying the reports of the institution, and being thoroughly informed of the practical working of the Homes from his own personal observations, originated the plan contained in his will by which the institution will receive its admission fees from his estate and about $100 in addition in each case. At the same time about five or six aged people will be admitted without paying admission fees. Thus Mr. Turbutt accomplishes his purpose, and the methods of the appellee are not disturbed. The appellee accepts in good faith the plan as proposed by Mr. Turbutt in his will. His language is clear, definite and certain. That the appellee will have no difficulty in carrying out his plans becomes more apparent when it is remembered that through a long period of years the appellee has existed, receiving from each inmate between $200 and $300 at admission and nothing more thereafter. The appellee's testimony on this question is not disputed. Nor is there any contradiction of the testimony of appellee that the estate will amount to about $50,000, and the income as invested from $2,000 to $2,400 per year. So that it would be necessary to admit from five to six aged people every year under the terms of Mr. Turbutt's will. If the trustees of the appellee, exercising a wise discretion, should determine to invest the Turbutt estate in United States Government three per cent bonds, purchasing them at 109, only about three aged people would be admitted each year.

The testimony of the treasurer of the Lady Managers of the appellee is also undisputed to the effect that the average number of vacancies per year for the past ten years at the Homes had been eleven, and she further testified that if by chance in any year there was not a sufficient num-

ber of vacancies at the Homes the full number of those to be admitted each year under Mr. Turbutt's will could be accommodated by putting two aged people in the same room, which is quite usual at other institutions.   Mr. Turbutt also provides that no outfits of clothing shall be required to be furnished by those admitted.   This outfit only costs a few dollars.   There will be more than $100 received in excess of the usual admission fee from each aged person admitted under the provisions of the will and a small part of this sum will provide the outfit in each case. The appellee now provides clothes for those needing them. The testimony of the appellee is uncontradicted that the character of the people now admitted into the Homes is the same in all respects as the requirements mentioned in Mr. Turbutt's will.   The Home is not a reformatory institution; it is a refuge for the unfortunate and deserving poor.   It does not admit, knowingly, immoral people, nor does it admit, knowingly, those who have been brought to poverty by their own vicious conduct.   A most thorough investigation has always been made as to the past life of the applicant.   The character of this investigation is fully set forth in the testimony.

From the above, it is apparent that if Mr. Turbutt's will had ended after the clause, " I give, devise and bequeath all the rest and residue of my estate, both real and personal, to The Baltimore Humane Impartial Society and Aged Women's and Aged Men's Homes," the appellee would have spent the income derived from the legacy in the support of the same kind of aged people as are mentioned in the subsequent clause of his will; and it is possible, too, that the appellee, if fully and further endowed at an early date, might see its way clear to entirely do away with the admission fees as now provided for in its rules.

These considerations make it clear that the language used by Mr. Turbutt simply amounts to a direction that his money shall be used for deserving aged people—exactly what would have been done had he not said anything on

the subject.   The testimony shows that Mr. Turbutt had been to the Homes several times, and that he had been informed that the requirements of the appellee as to the character of its inmates were substantially the same as those contained in the draft of his will which he showed to the appellee.   In view of this, it is proper to say that Mr. Turbutt's language in his will amounts to nothing but a request that the appellee shall be most careful in its investigation of the character of the applicants.   *Eutaw Place Church* v. *Shively*, 67 Md. 493; *Halsey* v. *The Convention*, 75 Md. 275; *Domestic and Foreign Missionary Society* v. *Gaither*, 62 Fed. Rep. 4.

2. No trust was created by the will, since the legacy was to the appellee for its corporate purposes.   *Pratt* v. *Sheppard Asylum*, 88 Md. 610.

3. We believe that the most favorable construction to the appellants that could be placed upon Mr. Turbutt's will would be to hold that his estate is vested in the appellee, with a condition subsequent attached to it.   The terms of the will, which begin with the word " provided," are the words often used when a condition is attached to a gift. There can be no contention that a condition precedent is intended, for at the outset of the will the property is devised and bequeathed absolutely.   It is upon the income derived from the investments as made by the appellee that the condition or proviso is to operate.   Courts are averse to construing conditions to be precedent where they might defeat the vesting of estates under a will.   *In re Stickney's Will*, 85 Md. 102.   The appellee having accepted the devise and legacy under the provisions or conditions contained in the will, and the testimony showing the appellee abundantly able and willing to carry out those provisions, surely no one is in a position to complain or object as long as the conditions are observed.   What might be the result of a failure on the part of the appellee to observe the conditions cannot well be considered at this time, for we believe the determination of that question would largely depend upon the

manner of the breach of the conditions. See *Ellicott* v. *Ellicott*, 90 Md. 321; *Ruppel* v. *Schlegel*, 7 N. Y. S. 936, and 6 *Ency. of Law*, (2d ed.), 506. The law recognizes estates subject to conditions subsequent which may happen in the most remote future, as in the case of *Woodworth* v. *Payne*, 74 N. Y. 196, where land was conveyed to a religious society for the erection of a church upon condition that the seats should be forever free.

If the Court should be of the opinion that it is an impossibility for the appellee to find for admission aged people who, as provided in the will, "shall have always through, life maintained a good moral character, and that his or her penury shall not have been the result of his or her vicious, or immoral conduct," the result would be that the appellee would take the estate absolutely free of the condition subsequent. *Jarman on Wills*, 852; 6th Vol. *Amer. and Eng. Ency.* (1st ed.), 902; *Ellicott* v. *Ellicott, supra.*

*Alfred J. Carr* and *Olin Bryan* filed a brief for W. H. and Samuel Turbutt, appellants.

McSHERRY, C. J., delivered the opinion of the Court.

The question arising on the record now before us is this : Is the will of Samuel Turbutt void and inoperative ? The will; omitting the formal clauses, is in these words : "After my lawful debts and funeral charges are paid I give, devise and bequeath all the rest and residue of my estate both real. and personal to the Baltimore Humane Impartial (Society), and Aged Women's and Aged Men's Homes ; provided the trustees and managers of said homes admit and receive into said homes during the existence or continuance of said homes one aged man or one aged woman each and every year for each and every four hundred dollars of the income to be derived from the property real and personal hereby given, devised and bequeathed ; said aged person so to be admitted shall not be required to pay any fee for admission or outfit, and provided also that such aged person so to be

admitted shall have always through life maintained. a good moral character and that his or her penury shall not have been the result of his or her vicious or immoral conduct." This provision is assailed by the collateral next of kin and heirs at law of the testator, who left no descendants, upon the following grounds : First, that the will creates a trust in. the subject-matter of the devise and bequest; secondly, that the trust thus created is void, because the beneficiaries are uncertain and indefinite ; and thirdly, that the trust is void because it is a perpetuity.

It is obvious at the outset that the testator did not intend these contesting parties, who are his cousins, to have any portion of the estate which he left. His intention was that the legatee and devisee named by him should possess it. If that legatee and devisee does not get the property disposed of by this clause it will be because the testator's intention is frustrated. Ordinarily the task which devolves upon a Court in dealing with the interpretation of a last will is to ascertain the testator's intention ; and the duty then imposed is to give that intention effect, if possible ; but in the pending controversy whilst the intention is apparent enough, the object of the proceedings avowedly is, not to give that intention effect, but to subvert and to disregard it altogether. There are, of course, instances where this has been done, because the rules of law imperatively required that it should be done ; but when done, it has always been done with great reluctance. Courts are not, or ought not to be, astute in searching for a construction which nullifies a will if there are other equally reasonable interpretations which uphold it. When it comes to the final analysis, as will be seen later on, the main contention of those who assault the will hinges on a meaning which they ascribe to a particular word, though that meaning is not its primary or ordinary signification. So we begin this investigation with two propositions confronting us, namely, that if the appellants get any part of the testator's estate they get it by defeating his intention that they should not have it ; and

they defeat his intention by ascribing to a word he employed an unusual and inappropriate meaning, which the context does not necessarily demand and which the intention disclosed by the will does not require that the word should have.

We need not pause to discuss the proposition that if this will creates a trust in favor of undefined and indefinite objects the trust is simply void for uncertainty and the next of kin and heirs at law will take the estate.  That doctrine is too well settled in Maryland to need discussion at this day.  So it comes to this:  Has a trust been created?  Is the gift to the Homes a gift upon a trust?  If there is no trust the case is at an end.

A trust may be created either by the use of appropriate technical words which, of their own proper vigor, indicate that a trust was designed to be raised; or, in the absence of such words, a trust may be created by other language when the purpose to establish it is otherwise sufficiently apparent.  In both instances, however, it always becomes a question of intention as to whether a trust exists.  If there be a manifest design to establish a trust then a trust will be declared though no apt technical words are employed; and if there be an equally manifest design not to establish a trust, then no trust will be declared though the words employed would, but for the contrary intention, be sufficient to create a trust.  Now, in the clause under consideration, no trust is declared in technical terms.  That is conceded. Whilst no set form of words is required to create a trust, if there be an intention to create one, still there must be a manifestation on the face of the will of such an intention before a trust will be declared.  The particular circumstances which denote such an intention are necessarily variant; but when a trust of the kind relied on here is asserted it may be generally affirmed that where there is a gift to one for the use of another, or where the legatee or devisee is clearly designed to have no beneficial interest in the property given to him, a trust for the benefit of some one was

intended to be created.   And this conclusion would result either from the words used or from the legal effect of the instrument itself. In the one case there would be an express declaration of a trust, in the other there would be a trust by construction; but in both it is essential that there should be an intention to create a trust, or none will arise.   To neither of these classes does this will belong.   Let us look, first, to its language, and, then, to its effect to ascertain whether from either or both a design to create a trust is apparent.

The contention is that the use of the word *"provided"* following the gift to the Homes creates and was intended to create a trust in favor of indefinite beneficiaries.   The natural office of a proviso is not to create a trust.   Ordinarily the term signifies a condition.   19 *Am. & Eng. Ency. L.* 298 and cases in notes ; *Haydon* v. *Stoughton*, 5 Pick. 528; 3 *Com. Dig.* 74, Con. A. 2, 76 A. 4.   The word provided *may* denote a trust when the context justifies such a rendering.   But obviously this can only occur when apart from the word itself, the intention to fasten a trust on the gift is apparent.   Words will not be given a distorted or unnatural meaning so that thereby they may be made to create a trust, if by doing this the very trust sought thus to be created would defeat the whole bequest.   Words may undoubtedly be bent to subserve a manifest intention, but they cannot be bent from their ordinary meaning to create an undisclosed intention, which when thus created would nullify the will itself.

The appellants rely much on the case of *Stanley* v. *Colt*, 5 Wall. 119.   That case was cited with approval by this Court in *Arthur* v. *Cole*, 56 Md. 106.   The gift in *Stanley* v. *Colt* was to an ecclesiastical body, and it was coupled with a proviso prohibiting a sale of the devised property. But that was not all.   Trustees were appointed by the testator and upon them and their successors for whose selection provision was made in the will, full power was conferred to lease the devised estate and to do all other legal acts for

the well ordering and management of the property. These trustees were clothed with the legal estate and the ecclesiastical society was simply the beneficiary entitled to receive the rents and profits. The property having been sold, the question for decision was whether the will gave to the society an estate upon a condition which, if broken by a sale, forfeited the estate ; or whether the gift was to trustees in trust for the use of the society. It was ruled by the Supreme Court that the obvious design of the will, apparent on its face, and declared in its express provisions, was to create a trust and not to constitute a condition ; and therefore the word " provided " was not read according to its literal common law meaning and was not held to impose a condition, but was made to give way to the intent of the testator as gathered from the entire will and was taken as expressing a limitation in trust. So, too, in *Sohier* v. *Trinity Church*, 109 Mass. 1, it was held that the fair construction of the instrument then before the Court was that the parties to it intended the title to be in trust, because the purposes of the grant, the terms of the grant " in trust nevertheless and upon condition always," and the character of the title of the grantors all showed that the words " upon condition " were not used in their technical sense. Indeed, without special allusion to other cases, the principle which runs through all those cited in the argument and through many more that might be mentioned is perfectly simple. It is this : When the intent to create a trust is clear from an inspection and reading of the whole instrument the use of the word " provided " or of any other inappropriate term will not thwart the intention. The corollary from this principle necessarily is : That where there is no such intention thus evidenced neither the word " provided " nor any other inapposite expression will be strained from its ordinary meaning merely for the purpose of thereby establishing a trust manifested in no other way, particularly if the establishment of a trust by that means will result in defeating a gift which but for such a construction would be valid and effective.

Apart, then, from the word "provided," upon which the theory of a trust has been constructed, is there in the effect of the clause anything indicating a purpose to establish a trust? This gift to the Baltimore Impartial Society and Aged Women's and Aged Men's Homes is not declared to be for the benefit of indigent aged people who have always through life maintained a good moral character. It is not given for the support of such a class nor to be used *for* such persons. In this important respect it differs radically from *Dashiell* v. *Attorney-General*, 6 H. & J. 1; *Wilderman* v. *Mayor &c., of Balto.*, 8 Md. 551, and the other cases relied on. There is no trust for the benefit of indigent aged persons at all; but there is a gift to the body corporate upon a condition that the corporation will do a certain thing, that is to say, will admit to the Homes which it manages a certain number of inmates every year. It may very well happen that the income derived from the devised estate will be entirely insufficient to support the number of persons admitted after the first year under the terms of the will; and this was a contingency which the testator clearly foresaw, and accordingly he did not undertake to dedicate that income to the support of those thus admitted, or to charge it with a trust for their benefit. There is not a word in the will directing how the income shall be disposed of, or pointing out the use to which it shall be applied. There is no trust impressed upon it, and it may be spent as well for the acquisition of property required by the corporation as for any other corporate purpose. There is no restriction on the right of the body corporate to use the income as it sees fit. The title to the property given by the will and the beneficial interest in it are placed in the corporation. The legal effect of the will, then, is far from indicating an intention on the part of the testator to create a trust. Neither by the words used in the will, nor by the effect of the will is a trust created. As there is no trust the doctrine which declares a trust invalid if the objects of the trust are indefinite does not apply. Of course, if there is no trust there is

no perpetuity which the law condemns.    The legatee and
devisee takes a beneficial interest and not a mere naked
legal title fettered with a trust, and there is consequently,
and there can be, no prohibited perpetuity.

We have said that no trust was created by the will and
that none was intended to be created ; and we have further
said that the Aged Women's and Aged Men's Homes took
the property, disposed of by the will, upon a condition.    It
is proper that a few words be added on this latter sub-
ject.    The Baltimore Humane Impartial Society and Aged
Women's and Aged Men's Homes is a body corporate.    Its
objects and purposes are in the highest degree laudable.
It provides shelter and support—it furnishes homes within
its own buildings—for destitute and deserving aged men
and women who may be admitted by the Board of Mana-
gers.    Under its regulations no applicant can be admitted
unless two-thirds of the managers consent, nor unless the
applicant " shall bring satisfactory testimonials to the pro-
priety of her (or his) conduct and the respectability of her
(or his) character."    In addition to this an admission fee
ranging from two hundred dollars up to seven hundred
dollars, according to age and residence, must be paid by
each person entering the Homes.    Under the charter and
regulations, then, the right to determine who shall be
admitted and the authority to prescribe the terms upon
which applicants shall be received are fully committed to
the Board of Managers.    That they—the managers—may
be lawfully clothed with such a right and such authority
cannot be questioned.    The possession of both is essential
to the orderly and successful government of the institution.
Now, the testator's gift to the corporation was a gift for its
corporate purposes.    There is not an intimation in his will
that either the principal or interest is to be used for any
other or different purpose.    There is no direction that the
income shall be used for the support of the persons admitted
free, as has already been pointed out ; and there is not a
word in the will which suggests any other disposition of

the funds than the corporation would have made of them had the proviso been wholly omitted from the will. The effect of the provision that for each four hundred dollars of income one person shall be admitted free, is, that of those who the Board of Managers may by a two-thirds vote conclude to admit, one for each four hundred dollars of income shall be received without paying the admission fee prescribed by the regulations ; but the four hundred dollars is made no more applicable to the support of that particular individual than to the maintenance of any other of the inmates. If no mention had been made in the will as to the admission of one person for each four hundred dollars of income, the property given by the will would have been applied to precisely the same uses and ends that, under the will, it must now be devoted to—the general corporate purposes of the Homes. How, then, can the mere declaration that for each four hundred dollars of income one person shall be admitted free, when, but for that declaration, the same person would have been required to pay the prescribed admission fee, be anything more than a condition annexed to the gift ? Inasmuch as the whole beneficial interest in the property is given to the Homes ; and inasmuch as that gift is followed by a clause which simply creates a condition, the true reading of the will is, that the estate given is not an estate given in trust, but one devised and bequeathed to the corporation for its general and corporate purposes upon a condition which does not prevent the vesting of that estate, and which is therefore a condition subsequent. This condition, the record shows, has been formally accepted by the corporation, and it now holds the estate under the will and upon the accepted condition prescribed by the will.

The case was submitted to the Court below without argument and a *pro forma* decree was signed dismissing the bill of complaint. As that decree denied the relief sought by the parties who assailed the validity of the will it coincides with the conclusion we have reached ; and for

the reasons we have assigned in this opinion it will be affirmed.

*Pro forma decree affirmed with costs*
*above and below.*

(Decided March 23rd, 1900.)