# THE TRUSTEES OF ST. CHARLES COLLEGE, A
## Body Corporate,

### *vs.*

## ROBERT G. HARPER CARROLL.

*Trusts: to corporations not empowered to hold property under other conditions. Estates upon condition: defeasance; right of re-entry. Deeds: grantor's right to impose conditions.*

By Chapter 50 of the Act of 1829, a corporation was formed under the name of the Trustees of St. Charles College, for the purpose of educating young men of the Roman Catholic religion for the ministry. In 1830 Charles Carroll of Carrollton conveyed to the corporation a certain tract of land, to it and to its successors forever in trust for the uses and objects set forth in the act of incorporation. The deed contained the proviso that the tract of land should never be sold or aliened by the said corporation or its successors, but that they should forever apply the proceeds of the land to the use, objects and trusts in the Act of Assembly referred to, and also that the Trustees of St. Charles College should, as soon as they came into possession of the tract of land, and their funds would allow, cause to be erected on the same the buildings proper and necessary for the trust; and also that said trustees and their successors should forever continue the seat and location of said college upon the premises conveyed; and provided that upon the breach of any of the conditions it would be lawful for the grantor, his heirs and assigns to re-enter into the premises conveyed and enjoy the same as in his former estate, and that in such a case the deed should thenceforth be void and of no effect in law or in equity. In 1911 the college, which had been erected and maintained on the property conveyed for the purpose of the trust, was destroyed by fire, and another set of buildings was erected by the college at another location. In an action of eject-

ment brought by one of the assignees and devisees of the grantor to recover his undivided interest in the tract of land, it was *held,* that the language employed in the proviso was plain and unequivocal, and that it created a condition subsequent, and that the successors of the grantee in the original deed, by abandoning the premises as the seat and location of the college, had committed a breach of the covenant, and the heirs of the grantor had the right to re-enter and take possession of the property under the deed of 1830.                                    p. 478

Where by a deed or will property is conveyed or devised to a corporation capable of taking it for its charter purposes, some of which purposes are precisely those indicated in the deed or will as the ones to which the funds or property is to be devoted, the conveyance or bequest is to be considered as not to the grantee or devisee *in trust,* but to it for its legitimate corporate uses, and is free from restrictions other than the conditions that may be by the deed or will imposed; and such conveyance or bequest is not to be construed as a trust, even though words capable of *creating a trust* may be used in the instrument.
                                                    pp. 471-474

A grantor has the right to dispose of property under any terms he pleases which do not contravene some principle of public policy or positive rule of law.                          p. 475

An estate upon condition is one which has a qualification, or by which, on the happening of a particular event, it may be created, ended or destroyed. If set forth, the condition is express; if it allows the estate to vest, and then to be determined in consequence of the non-observance of a requirement, it is a condition subsequent.                                      p. 477

Conditions subsequent are not favored by the law, because on breach there is a forfeiture; but they may be annexed to a grant, and when the intention of the parties is clear it should be respected.                                              p. 478

*Decided June 26th, 1913.*

Appeal from the Circuit Court for Howard County (FOR-SYTHE and BRASHEARS, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, PATTI-SON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar H. Gans* and *Harry M. Benzinger* (with whom was *Daniel M. Murray* on the brief), for the appellant.

*Edward M. Hammond* and *Joseph L. Donovan,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 17th day of August, 1912, the appellee, who is one of the heirs at law of Charles Carroll of Carrollton, instituted an action of ejectment in the Circuit Court for Howard County against the Trustees of Saint Charles College, a body corporate, to recover a tract of land lying in that county containing two hundred and fifty-four and a half acres of land. The case was tried before a jury in that Court and resulted in a verdict and judgment for the plaintiff for a one-eleventh undivided interest in the land sued for, and from that judgment the defendant has appealed.

The appellant was incorporated by the Act of 1829, Chapter 50, by the name of the Trustees of Saint Charles College, and the purpose of its creation was the education of young men of the Roman Catholic religion for the ministry of the Gospel. The preamble to the Act recited that Charles Carroll of Carrollton, having it in contemplation to found a seminary to prosecute such work, had applied to the General Assembly for leave to convey to certain named persons and their successors forever a tract of land in trust for the purposes aforesaid. The first section of the Act declared the persons named to be a body corporate, and that they and their successors should have perpetual succession. Power was granted to the corporation "to receive and hold the said donation, deed and gift of the said Charles Carroll of Carrollton, as designated in the preamble of this Act, and to receive and

hold any property, real and personal, acquired either by purchase, gift, grant or devise, not exceeding the whole yearly value of six thousand dollars, in trust for the purpose designated in the preamble hereto."

By the fifth section of the Act it was provided: "That all property which shall be received, and held by the said corporation, as well real as personal, and whether derived by gift, devise, bequest, purchase or otherwise, shall be held by them, to and for the only purpose, and in trust exclusively for the education of pious young men of the Catholic persuasion for the ministry of the Gospel."

Section eight provided that the corporation should have full and perfect control over all the property belonging to it for the purpose of the trust aforesaid; provided, that none of its funds or property, of which it should become possessed, should be appropriated otherwise than for the trust declared in the Act.

On the 27th of March, 1830, Charles Carroll of Carrollton executed a deed to the Trustees of Saint Charles College by which he granted and conveyed to it the land which is the subject-matter of this suit. The deed referred to the Act of Incorporation and recited its power to receive and hold in trust for the purpose therein declared and to the extent and amount therein limited, any property, real or personal. It then, in consideration of the trust therein mentioned to be performed and of the sum of five dollars, granted and conveyed unto the Trustees of Saint Charles College the tract of land containing two hundred and fifty-four and a half acres and which is described by metes and bounds, courses and distances. This is the same land described in the declaration. The land in express terms was granted to the Trustees of Saint Charles College and their successors forever in trust and for the uses and objects set forth in the Act of Incorporation.

The deed contained a proviso which is here transcribed:

"Provided always that the tract of land and premises hereby conveyed shall never be sold or aliened by

the said Trustees of Saint Charles College, or their successors, but that they shall forever faithfully apply the proceeds of said land to the uses, objects and trusts in said Act of Assembly before referred to specified and set forth, and also that the said Trustees of Saint Charles College shall as soon after they come into possession of said tract of land as their funds will allow cause to be erected on the premises hereby conveyed such buildings as may be proper and necessary to the purposes of this trust; *and also that said Trustees of Saint Charles College and their successors shall continue the seat and location of said College upon the premises hereby conveyed forever;* and provided lastly that *upon the breach of any of the conditions above stated it shall and may be lawful to and for the said Charles Carroll of Carrollton, his heirs and assigns,* into the premises hereby conveyed or unto any part thereof in the name of the whole *to re-enter and the same to have again,* possess, occupy and enjoy as in his former estate, and then and in such case this deed and clause, matter and thing therein contained *shall from thenceforth be utterly void and non-effect in law and equity.*"

The appellant took possession of the property under the deed in 1830, and has ever since remained in possession of it. It erected a fine college building, chapel, and other valuable improvements upon the property. The teachers and the entire body of students resided permanently at the college from about the year 1848 until March 16th, 1911, on which date the college was destroyed by fire.

The questions of rebuilding and the cost of construction were taken up by the college authorities, and the matter was referred to his Eminence Cardinal Gibbons. He was at first decidedly in favor of rebuilding upon the old location, but when it was pointed out to him that the cost of transportation of material to the old site would be so great and the greater length of time it would require to complete the work

in Howard County, he concluded not to insist upon his preference to relocate the college upon its former site, and remitted the question of a new location to the judgment of the trustees, and they decided to locate the college at Cloud Cap, in Baltimore County, which place is about ten miles distant from its original location. The reason which induced the location at Cloud Cap is thus tersely stated by Mr. O'Connor, the builder: "Upon estimates being made, we found that the cost of rebuilding there (the old location) would really be prohibitive, and under the most favorable conditions it would cost at least $60,000.00 more to build a college there instead of at Cloud Cap near Catonsville. It would take two or three times as long to get there, it would take a great deal longer to build there, and the desirable help would have to be paid more to go there to work. It really would have cost about $100,000.00 more to build there than at Cloud Cap."

There is no question in this case of any breach of trust on the part of the Trustees of Saint Charles College. They have faithfully and scrupulously applied all its funds, property and income to the trust declared in its charter and in the deed mentioned. But the evidence is clear and full to the point that, because of the prohibitive cost of erecting the new building on the old location in Howard County, they have permanently abandoned *"the seat and location of said college upon the premises"* granted by the deed of March 27th, 1830. Does this fact by a true construction of that deed cause a forfeiture of said land whereby it has reverted to the heirs of the grantor? If it does, then the plaintiff had a right to recover his undivided interest in the property.

We think it perfectly clear, upon the authority of *Bennett* v. *Humane Imp. Society,* 91 Md. 10; *The Woman's Foreign Missionary Society* v. *Mitchell,* 93 Md. 199; *Baltzell* v. *Church Home,* 110 Md. 244, and other cases in this Court, that the deed from Charles Carroll of Carrollton to the Trustees of Saint Charles College was in all respects valid, and that it passed title to the property conveyed to the grantee for the clearly defined corporate purpose mentioned

in its charter, subject, however, to the legal operation and effect, if any, of the provisos contained therein.

· In *Woman's Foreign Missionary Society* v. *Mitchell, supra,* the Court had under consideration the construction of the will of Maria A. Sherman. Two questions were presented for decision: first, whether the appellant society was the devisee and legatee intended to be named and actually described in the residuary clause of the will; and secondly, whether that clause was valid. That clause was in these words: "I direct that my two houses and lots in Mountain Lake Park, Garrett County, Maryland, and my lots in Covington, Kentucky, and the stock in the Southern Building Association held in care of W. G. Hay, of Hagerstown, Maryland, and all other property, both real and personal, other than that already bequeathed, be sold, and the proceeds thereof, together with whatever monies I may die possessed of, be held in trust by the Board of Managers of the Foreign Missionary Society of the Methodist Episcopal Church of the United States of America for the following purposes: After all my debts, bequests and provision for my burial, etc., be paid, that sufficient be used to educate as Bible readers in India six girls, one to be named "Dorcas Sherman"; one "Avis Cecil Sherman"; one "Mary Jane Sherman"; one "Sarah Jennie Sherman"; one "Jennie Smith"; one "Grace Mabel Sherman"; the money remaining after that set aside for the education of the aforesaid Bible readers to be applied to the purchase of a building to be used for the education of girls in India to be called the "M. Adelaide Sherman Home" and the location of said building to be left to the decision of Bishop Thoburn or his successors."

This clause was assailed upon the ground that it created a trust whose objects were indefinite and uncertain. The Court decided, upon the facts before it, that there had been a *misnomer* of the devisee and legatee, and that "the Woman's Foreign Missionary Society of the Methodist Episcopal Church" was the corporation intended by the testatrix, though *misnamed* in her will, to take the residuary estate. It then

consulted the charter powers of the society, and found "that the particular business and object of said society is to engage and unite the efforts of christian women in sending female missionaries to women in foreign mission fields of the Methodist Episcopal Church, and in supporting them and native christian teachers and Bible readers in those fields," and that India was one of those fields. JUDGE McSHERRY, speaking for the Court then propounds this question: Is the residuary clause void by reason of its creating a trust whose objects are vague, indefinite and uncertain?

"Not a great deal need be said in disposing of this inquiry. If there is no trust created, or if none was intended to be created, as to this *residuum,* then there can be no trust that is void by reason of the objects of it being indefinite and uncertain. So, clearly, the first question to be determined is whether there *is* a trust which has been actually created pursuant to an intent to create one? It is true the testatrix declared that the property should 'be held in trust by the Board of Managers, etc., for the following purposes.' These purposes, it is alleged are, after the payment of debts, bequests and funeral expenses, 'that sufficient be used to educate as Bible readers in India six girls' to be named as directed in the clause, and that 'the money remaining after that set aside for the education of the aforesaid Bible readers' should 'be applied to the purchase of a building to be used for the education of girls in India to be called the "M. Adelaide Sherman Home," and the location of said building to be left to the decision of Bishop Thoburn or his successors.' Excluding the sums applicable to the payment of debts, legacies and funeral expenses, there is and can be no trust at all. If there be a manifest design *not* to establish a trust, then no trust will be declared though the words employed would or might but for the contrary intention, be sufficient to create a trust. *Bennett* v. *Balto. Humane So., 91* Md. 10. Now, perhaps, had the precise phraseology, which is found in the will before us, been used in making a like devise and bequest to a natural person, it might be said

that the design was to create a trust, because the purposes
indicated are not those ordinarily performed by an individ-
ual; but when it is remembered that the very end which the
corporation here made the beneficiary was organized to effect
is the education of Bible readers and the instruction of girls
in foreign lands, it becomes evident that the property was
given to the corporation not in trust for indefinite objects,
but that it was given to it to be used for its recognized and
clearly defined corporate purposes. The specific design of
the gift is that the proceeds of the property shall be used,
that is spent, by the beneficiary for *its* chartered ends and
not for some one else's benefit. The corporation is not to
hold the fund for the use of others, but it is to spend that
fund in the prosecution of its missionary work. The declara-
tion by the testatrix that the funds should be used to educate
six Indian girls as Bible readers impresses no trust upon the
fund, because the education of the girls, whether six, or more
or less, as Bible readers is precisely the purpose to which the
funds would have been applied had the gift been made to the
same devisee and legatee without these superadded words. It
may and probably would be accurate to say that the provision
requiring *six girls* to be educated who are to be *named* as in
the will indicated, is a condition annexed to the gift as contra-
distinguished from a trust impressed upon the gift. The
testatrix could have had no object in creating a trust, since
without a trust precisely the same application will be made
of the funds under the charter of the society as if there had
been or could be a valid appropriation of them to these ident-
ical ends by means of a trust. If it were held that the words
of the will attempted to create a trust which trust when
created would be denounced as void for uncertainty, and
which, therefore, would be called into existence only for the
purpose of being considered as *not* in existence, a Court,
ought to hesitate before putting such a construction on the
words, if another construction which treats them as creating
a condition instead of a trust and therefore which upholds
the decedent's intention, is equally available and accurate.

The whole scheme of the testamentary disposition contemplates imposing upon the beneficiary in declaratory language precisely the duty which its charter would have required it to perform with respect to this property had such declaratory language been omitted; save as to the *number* and *names* of the girls to be educated. These exceptions constitute, we think, not evidence of an intention to establish a trust but they denote simply a condition which has been annexed to the gift; and this condition relates not to the *vesting* of the property but to the *expenditure* of it. Much of the reasoning employed in the recent case of *Bennett* v. *Humane So., supra,* is pertinent to this branch of the controversy. As that case was decided less than a year ago we do not deem it necessary to quote from it now."

"What has been said in relation to the six Indian girls is also applicable to the remaining portion of the clause respecting the purchase of a building to be used for the education of girls in India. This is a gift to the society, the property given to be used in the line of that society's mission work. The use is a corporate use within the limits of its charter powers. In effect, the testatrix said by her will to the society: 'You have power under your charter to educate females in far-off lands; in prosecuting this work you have authority to build or buy houses, as houses are necessary in carrying on schools. Now, I give you these funds—the proceeds of this resdiuary estate—to be used by you for these corporate purposes, but the building you purchase with the money I give you must be called the M. Adelaide Sherman Home.' Can it be pretended that such a declaration would create a trust, and a trust too that would be void because the objects of it are indefinite? Obviously it amounts merely to a gift for corporate uses coupled with the condition that the building when purchased or constructed should bear the benefactor's name. Without questioning any judgment heretofore pronounced by this Court, we say that *this* will create no trust because none was intended to be created; and the evidence that none was intended to be created is furnished by the

fact that the gift, whatever the language used in making it, was to a corporation capable of taking for its chartered purposes, some of which purposes are precisely those indicated in the will as the ones to which the funds were to be devoted. The gift is, therefore, not to the society in trust, but to it for its legitimate corporate uses and is free from restrictions other than the conditions that have been indicated."

The case before us falls within the principle of the above case, which sustains the validity of the deed of March 27th, 1830, to the appellant as a deed to the corporation for its chartered and corporate purposes.

The crucial question in the case is the legal effect, under the facts in evidence, of the third proviso, or condition, contained in the deed. The plaintiff's case rests upon the breach of *this* condition. There has been no breach of either of the other conditions, and it may well be conceded that the restraint upon alienation imposed by the first condition would be held void, if the case depended upon the validity of that restraint. But it does not. It evidently was not the intention of the parties that the third proviso should be treated as a mere restraint on alienation. They had already provided for that contingency, and the third condition was introduced for an entirely different purpose for reasons which the grantor deemed sufficient. That provision not only imposed a positive duty and obligation upon the corporation "to continue the seat and location of said college upon the premises hereby granted," but in clear and unmistakable language declared that upon a breach of the condition the grantor, his heirs and assigns might re-enter and take possession of the granted premises "as in his former estate," and "in such case this deed and clause, matter and thing herein contained shall from *thenceforth be utterly void and non-effect in law and equity.*"

It is impossible to escape the plain meaning and force of this language. The parties to the deed must have understood—for they have so declared—what would be the effect upon the grantee's title of a breach of this condition. The

grantor had a right to dispose of the property upon any terms he pleased which did not contravene some principle of public policy or positive rule of law. The corporation had the power to receive and hold the property, and was not prohibited from accepting it upon such lawful conditions as the grantor might impose.

In *Austin* v. *Cambridgeport Parish,* 21 Pick. 215, a lot of ground had been granted on the condition that it should be held for the support of the first and all succeeding ministers who should be settled by a religious society to preach in a meeting house on another lot, and all other meeting houses which should subsequently be built on the same site; and in default of the appropriation of the rents and profits thereof to that purpose the deed was to be void, and the lands to remain in the grantor and his heirs as though the conveyance had never been executed. The proprietors of a meeting house lot, to whom the parsonage lot above mentioned had been transferred, took down the meeting house and erected a new one on a different site, having voted however that the meeting house lot should be reserved for the erection of a meeting house at some future period when they might deem it expedient, and this lot had remained vacant three years and a half when an action was commenced to recover the parsonage lot for a breach of the conditions. It was held, that there had been a forfeiture by reason of the breach. The Court said: "The terms used in this deed are those indicating in the most direct and unequivocal manner, that the grantees were to take an estate upon condition subsequent. The present tenants derive their title under the grantees in this conveyance, and take it with the like conditions. Has there been a breach of the condition of this deed? It is admitted by the tenants that the meeting house situated on the lot conveyed by Rufus Davenport and others, was taken down in the year 1833 by order of the tenant, and that no other meeting house has since been built or is now building on the same site, but the tenants have caused another meeting house to be erected on a different lot, in which they have their religious

worship.    There is therefore at the present time no such
appropriation of the land conveyed to them under this deed,
as was required by the terms of the grant, and the only re-
maining inquiry on this point is, whether there has been such
an abandonment of the former location as a site for a meet-
ing house, as will cause a forfeiture of the estate granted by
the deed of Benjamin Austin and Jonathan L. Austin.    A
destruction of the house by tempests, or other casualty, or the
taking it down for the purpose of rebuilding on the same site,
obviously would not have affected the rights of the tenant.
The law would in such case preserve their estate, and give
such a construction to the deed as would afford a reasonable
opportunity for rebuilding a house on the same site whenever
it should become necessary.    But the tenants contend, that
having occasion to make extensive repairs to render the house
on the old site suitable and convenient as a place of public
worship, they had the right to cause the same to be taken
down, to erect a new meeting house upon a different lot, and
to remove to the same as their stated and regular place of
worship, without causing any breach of the condition upon
which they held the premises demanded, and especially as
the tenant, when they voted to change the location of their
meeting house, also voted, "that the lot formerly occupied for
a meeting house be reserved for the erection of a meeting
house for some period hereafter, when said parish may deem
it expedient."

"These conditions will not, in our opinion, save the breach
of the condition annexed to the deed.    An actual removal
without any present intention 'of returning, and accompanied
as it is by the strong presumptive evidence as to proposed
future course, by the erecting on a different site an edifice
designed to be used as a substitute for the old one, and a
dedication and an actual adoption of it as such, are facts too
significant in their character to be controlled by the circum-
stances relied upon by the tenants in their defense.    Their
vote "reserving the lot for the erection of a meeting house at

some period hereafter, when said parish may deem it expedient, "leaves the event altogether too contingent. Such a vote might be but a dead letter, and cannot avail to save the forfeiture of an estate given on the express conditions of applying the profits of it to the use and support of a minister who should preach in a meeting house to be placed on the lot thus in effect abandoned."

It is said in *Blanchard* v. *Detroit, Lansing & Lake Michigan Railroad Company,* 18 Am. Rep. 142, that, "An estate upon condition is one which has a qualification annexed, by which, on the happening of a particular event, it may be created, enlarged or destroyed. If set forth, the condition is express; if it allows the estate to vest, and then to be defeated in consequence of non-observance of a requirement, it is a condition subsequent. 2 *Bl. Com. Ch.* 10; 4 *Kent's Com. Ch. "Of Estates on Condition"; Coke on Lit.* 201a, 215a, 215b, 233b, 234b, 251b; *Bac. Ab., Tit. Con.; Com. Dig. Tit. Con.; Shep. Touch. Ch.* 6 *"Of Conditions."*

The question whether there is a limitation or a condition, or whether there is a condition precedent or subsequent, or whether what is to be expounded is a condition or covenant, or something capable of operating both ways, frequently becomes very perplexing in consequence of the uncertain, ambiguous, or conflicting terms and circumstances involved; and the books contain a great many cases of the kind, and not a few of which are marked by refinements and distinctions which the sense of the present day would hardly tolerate.

Where, however, the terms are distinctly and plainly terms of condition, where the whole provision precisely satisfies the requirements of the definition, and where the transaction has nothing in its nature to create an incongruity, there is no room for refinement, and no ground for refusing to assign to the subject its predetermined legal character. In such a case the law attaches to the act and ascribes to it a definite significance, and the parties cannot be heard to say, where there is no imposition, no fraud, no mistake, that, although they de-

liberately made a condition and nothing but a condition, yet they meant that it should be exactly as a covenant.

It is stated in sec. 2, *Wash. on Real Prop.* (5 ed., page 3), that: "Among the forms of expression which imply a condition in a grant the writers give the following: 'On Condition' —'Provided Always'—'If It Shall So Happen'—or 'So long that he the grantee pay, etc., within a specified time'; and grants made upon any of these terms vest a conditional estate in the grantee. And it is said other words make it a condition, if there be added a conclusion with a clause of re-entry, or without such clause, if they declare that, if the feoffee does or does not do such an act, his estate shall cease or be void. If a covenant be followed by a clause of forfeiture, and it is broken, it will be construed to be a condition."

Conditions subsequent are not favored in the law, because on the breach thereof there is a forfeiture of the estate, and the law is adverse to forfeitures. But they may be annexed to grants, and when the intention of the parties is clear the Court is bound to respect it.

The language employed in the proviso we are dealing with is so plain and mandatory that we are constrained to hold that it created a condition subsequent and that the appellant, by abandoning the premises as the seat and location of the college, has committed a breach of the covenant, and that the heirs of the grantor have a right to re-enter and take possession of the property under the deed of 1830.

The prayers granted at the instance of the plaintiff are in harmony with the views we have expressed and were properly granted and there was no error in rejecting the defendant's prayers.

The judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*