## KAPIOLANI MATERNITY AND GYNECOLOGICAL HOSPITAL *v.* ERNEST H. WODEHOUSE AND JAMES L. P. ROBINSON, EXECUTORS OF THE WILL OF MARY E. FOSTER, DECEASED.

### No. 2063.

Argued August 15, 1932. Decided August 31, 1932.

Perry, C. J., Banks and Parsons, JJ.

490

OPINION OF THE COURT BY PARSONS, J.

This case is before us by submission of the parties upon an agreed statement of facts, the text of which we herein quote as follows:

"The undersigned Kapiolani Maternity and Gynecological Hospital, an Hawaiian corporation, and Ernest H. Wodehouse and James L. P. Robinson, executors of the will of Mary E. Foster, deceased, being parties to questions in difference which might be the subject or subjects of a civil action or actions in the circuit court of the first judicial circuit of the Territory of Hawaii, hereby agree upon a case containing the facts hereinafter set forth, upon which the controversy depends, and hereby present a submission of the same to this court:

"That on, to-wit, December 15, 1891, pursuant to the provisions of section 1442 of the Compiled Laws of the Kingdom of Hawaii, as amended by section 1 of chapter 16 of the Laws of 1884 of said Kingdom, the then minister of the interior of said Kingdom by and with the consent of the King in privy council, did grant a charter of incorporation to the Kapiolani Maternity Home as a corporation for the purpose of benevolence and charity and for the special object of providing a maternity home where Hawaiian women could receive proper care and treatment during the period of childbirth; that in and by said charter of incorporation, said corporation was and is empowered *inter alia* to take and to receive by gift, grant, devise and bequest such real and personal estate and property which might be necessary for the maintenance of said maternity home and the other pur-

poses of the corporation.

"That the managers of said corporation are, and during all the times hereinafter mentioned were trustees.

"That on, to-wit, April 8, 1931, upon application duly made in that behalf, the treasurer of the Territory of Hawaii with the approval of the governor of said Territory did allow an amendment of the charter of incorporation of the Kapiolani Maternity Home, wherein and by which the name of said corporation was changed from that of 'Kapiolani Maternity Home' to that of 'Kapiolani Maternity and Gynecological Hospital.'

"That a certified copy of the charter of incorporation as granted on, to-wit, December 15, 1891, is filed herewith and made a part hereof to all intents and purposes as if fully incorporated herein.

"That the Kapiolani Maternity and Gynecological Hospital at no time has had capital stock nor provisions for making dividends or profits and whatever it has received or may receive from any source, it held and holds and will hold in trust to be devoted to the object of sustaining a maternity hospital and increasing its benefit to the public by extending or improving its accommodations and diminishing its expenses; that its funds are and have been derived mainly from public and private charity; that its affairs are and have been and will continue to be conducted for the public purpose of benevolence and charity, and especially to providing a maternity home where Hawaiian women can receive proper care and treatment during the period of childbirth, without any expectation on the parts of those immediately interested in the corporation of receiving any compensation which would inure to their own benefit and without any right to receive such compensation.

"That Mary E. Foster, late of Honolulu, City and County of Honolulu, Territory of Hawaii, died on, to-

wit, December 19, 1930, leaving a last will and testament dated December 22, 1926, and codicil thereto dated January 17, 1930, which together were on, to-wit, February 11, 1931, admitted to probate by a judge of the circuit court of the first judicial circuit of the Territory of Hawaii, sitting at chambers, as and for the last will and testament of the said Mary E. Foster; that Ernest H. Wodehouse and James L. P. Robinson are the duly appointed, qualified and acting executors of the said will of said decedent.

"That in and by the ninth article of said will of December 22, 1926, the testatrix did bequeath to the Kapiolani Maternity Home the sum of fifty thousand dollars ($50,000.00) in words following: 'Ninth: I give, devise and bequeath the sum of fifty thousand dollars ($50,000.00) unto the maternity hospital known as Kapiolani Maternity Home, of Honolulu, Territory of Hawaii. It is made a condition of this bequest that said maternity hospital shall establish within one year after payment of this bequest and maintain at least five (5) beds at said maternity hospital. These beds shall be maintained either in wards or in private rooms but shall be for the use of women in need of the medical and other care administered by the said maternity hospital and who are unable to pay for such care. It is made an express condition of this bequest that no woman in need of care who is unable to pay for such care shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose care the said maternity hospital is making no charge; and preference shall be shown women with native Hawaiian blood in their veins. If during my lifetime, and after the execution of this will, I shall give to said maternity hospital said sum of fifty thousand dollars ($50,000.00), or any part thereof, such sum so given shall be considered an advancement

and· the amount hereby bequeathed shall be reduced by the amount of such advancement.'

"That a certified copy of the last will and testament of the said decedent of December 22, 1926, and the codicil thereto of January 17, 1930, is filed herewith and made a part hereof to all intents and purposes as if fully incorporated herein.

"That on, to-wit, December 22, 1926, and for many years prior thereto and up to March 26, 1929, the Kapiolani Maternity and Gynecological Hospital maintained and conducted a maternity hospital at No. 1538 Beretania street, Honolulu; that said hospital as there located was at all times fully equipped with all necessary furniture, fixtures and equipment, including beds; that on or about February 24, 1928, the site of said maternity hospital having become unsuitable and the hospital building proper having by reason of decay become dangerous to the health and safety of patients admitted thereto, the trustees of said Kapiolani Maternity and Gynecological Hospital resolved to acquire a new hospital site and erect a new maternity hospital building thereon in lieu of and in substitution for the existing maternity hospital at No. 1538 Beretania street; that thereafter on, to-wit, February 24, 1928, the Kapiolani Maternity and Gynecological Hospital, through its trustees, acquired its present hospital site at the corner of Punahou and Bingham streets; that neither on said February 24, 1928, nor thereafter, however, did the Kapiolani Maternity and Gynecological Hospital personally own money or property sufficient to erect a suitable modern maternity hospital building, and in order to raise sufficient funds therefor, exclusive of beds to be established and/or maintained therein and/or furniture, fixtures or equipment to be installed therein, the trustees resolved to borrow money for that purpose upon the security of its real property

494

and solicit the assistance of such persons within the Territory of Hawaii as were charitably disposed and interested in it and the public service that it was performing; that to that end, the trustees created a building fund, the funds of which were to be devoted exclusively to the erection and completion of the proposed new maternity hospital on its new site at the corner of Puna- hou and Bingham streets, opened an account in a local bank to the credit of said building fund and deposited therein all moneys possessed by it and available therefor and such additional moneys as it was able to borrow upon the security of its real property; that on, to-wit, August 20, 1928, it entered into a building contract with a local contractor for the erection and completion of a maternity hospital building on its new site at the corner of Punahou and Bingham streets for the agreed price of one hundred fifty-three thousand eight hundred forty-six dollars ninety cents ($153,846.90), which amount was approxi- mately twenty-five thousand dollars ($25,000.00) in excess of the amount then to the credit of said building fund, and thereafter through its trustees approached and solicited divers persons, including the testatrix, Mary E. Foster, to contribute to said building fund, explaining to them and her that the Kapiolani Maternity Home was trying to raise sufficient funds to meet the cost of the erection and completion of a new maternity hospital building on its new site on the corner of Punahou and Bingham streets and stating what had been done by the trustees up to that time as hereinbefore alleged; that on, to-wit, February 15, 1929, the testatrix, Mary E. Foster, in response to the solicitations made of her, with full knowledge of all the facts and well knowing that any moneys that she might contribute to such building fund were for the exclusive purpose of defraying the cost and expenses of the erection and completion of the new

maternity hospital building at the new site and would be used exclusively for that purpose and not for the establishment and/or maintenance of beds or for other furniture, fixtures or equipment to be used in said maternity hospital, made a gift to the Kapiolani Maternity and Gynecological Hospital of the sum of twenty-five thousand dollars ($25,000.00) accompanying her gift with a letter over the signature of E. H. Wodehouse, Esq., as agent for the said Mary E. Foster, addressed to Mary H. Hons, treasurer of the Kapiolani Maternity Home, containing the following statement: 'I have been instructed by Mrs. Mary E. Foster to hand you the inclosed check No. 363 on The Bank of Bishop & Co., Ltd., payable to the treasurer of the Kapiolani Maternity Home, in the sum of $25,000.00, this amount being her contribution to the fund being raised by the home for the completion of the new maternity hospital;' that the said sum of twenty-five thousand dollars ($25,000.00) so contributed by the said testatrix, Mary E. Foster, was deposited in said bank by the trustees of the Kapiolani Maternity Home and Gynecological Hospital to the credit of the building fund so created as aforesaid and with other funds therein were checked out and used exclusively by it in defraying the expenses and the cost of erection and completion of said new maternity hospital building and for no other purpose; that the new maternity hospital was completed on, to-wit, March 26, 1929, and the furniture, fixtures and equipment, including beds, of the former hospital at No. 1538 Beretania street then removed thereto, since which time the maternity hospital so previously maintained and conducted at No. 1538 Beretania street has been abandoned and the Kapiolani Maternity and Gynecological Hospital ever since last named date has conducted and maintained and is now conducting and maintaining the new maternity hospital at its

new site on the corner of Punahou and Bingham streets for the purpose of benevolence and charity and for the special object of providing a maternity home where the Hawaiian women can obtain proper care and treatment during the period of childbirth; that the Kapiolani Maternity and Gynecological Hospital, in token of its appreciation of the gift of the testatrix Mary E. Foster, during the period of construction of the new maternity hospital building, named the west wing of the upper floor the 'Mary E. Foster Wing' and fittingly and permanently inscribed upon the arch of the corridor leading to said wing the words 'Mary E. Foster.'

"That neither the sum of fifty thousand dollars ($50,000.00) nor any lesser sum is adequate to establish within one year after the payment of the sum of fifty thousand dollars ($50,000.00) or any lesser sum and perpetually maintain at least five beds at the Kapiolani Maternity and Gynecological Hospital conducted by the Kapiolani Maternity and Gynecological Hospital at the corner of Punahou and Bingham streets, Honolulu, Hawaii, either in wards or in private rooms for the use of women in need of medical and other care administered by the Kapiolani Maternity and Gynecological Hospital and who are unable to pay for such care subject to the condition that no one woman in need of care, who is unable to pay for such care, shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose care the said Kapiolani Maternity and Gynecological Hospital is making no charge.

"That notwithstanding the inadequacy of the sum of fifty thousand dollars ($50,000.00) or any less sum to establish and perpetually maintain five beds pursuant to and in conformity with the provisions of article nine of the will of the testatrix of December 22, 1926, the

Kapiolani Maternity and Gynecological Hospital is willing to accept said legacy in either the full amount, or should the court hold that the gift of the testatrix of February 15, 1929, was an 'advancement' within the meaning of that term as employed in said ninth article of said will, in the reduced amount upon the condition that it shall establish and perpetually maintain, pursuant to and in conformity with the provisions of said ninth article of said will, as many beds as the legacy received by it may be reasonably adequate to establish and maintain, not exceeding five beds, and should the amount of said legacy at any time be increased by accretions or contributions for that purpose or otherwise to an amount reasonably adequate to establish and perpetually maintain additional beds pursuant to and in conformity with the provisions of said ninth article of said will, it will forthwith establish and perpetually maintain additional beds to the number of five beds pursuant to and in conformity with the provisions of the said ninth article of the said will of said testatrix of December 22, 1926.

"That the executors of the will of Mary E. Foster, deceased, claim: 1. That the gift of the testatrix on February 15, 1929, of the sum of twenty-five thousand dollars ($25,000.00) is an 'advancement' within the meaning of that term as the same is employed in the ninth article of the will of the testatrix of December 22, 1926, and the amount bequeathed should be reduced by the amount of such gift. 2. That under the terms and conditions of said bequest, the legacy of fifty thousand dollars ($50,000.00) is reduced to the sum of twenty-five thousand dollars ($25,000.00). 3. That the Kapiolani Maternity and Gynecological Hospital is not entitled to receive the legacy of fifty thousand dollars ($50,000.00) or any lesser sum unless it accepts the same upon the conditions attached to said bequest, to-wit, to establish

498

and maintain five beds at said maternity hospital pursuant to and in conformity with the provisions of article ninth of the will of the testatrix, dated December 22, 1926.

"That the Kapiolani Maternity and Gynecological Hospital on the other hand claims: 1. That the gift of the testatrix on February 15, 1929, of the sum of twenty-five thousand dollars ($25,000.00) is not an 'advancement' within the meaning of that term as the same is employed in the ninth article of the will of the testatrix of December 22, 1926, and the amount bequeathed should not be reduced by the amount of such gift. 2. That under the terms and conditions of said bequest, the legacy of fifty thousand dollars ($50,000.00) is not reduced to the sum of twenty-five thousand dollars ($25,000.00). 3. That it is entitled to receive from the executors of the will of the testatrix a legacy in the full amount of fifty thousand dollars ($50,000.00). 4. That notwithstanding the inadequacy of the sum of fifty thousand dollars ($50,000.00) or any less sum to establish and perpetually maintain five beds pursuant to and in conformity with the provisions of article nine of the will of the testatrix of December 22, 1926, it is entitled to receive the full amount of said legacy, to-wit, the sum of fifty thousand dollars ($50,000.00) or the reduced amount of said legacy, to-wit, the sum of twenty-five thousand dollars ($25,000.00) upon the condition that it shall, and despite its declaration that it will, establish and perpetually maintain pursuant to and in conformity with the provisions of the ninth article of the will of the testatrix of December 22, 1926, only as many beds as the legacy received by it may be reasonably adequate to establish and maintain, not exceeding five (5), until the amount of said legacy shall at any time be increased by accretions or by contributions for that purpose or otherwise to an amount reasonably adequate to establish and perpetually

maintain additional beds pursuant to and in conformity with the provisions of said ninth article of said will, when it shall and will forthwith establish and perpetually maintain additional beds to the number of five (5) beds pursuant to and in conformity with the provisions of said ninth article of the said will of said testatrix of December 22, 1926."

Disregarding for the time being the sequence of claims made by the respective parties as set forth in the foregoing submission, let us for convenience consider first the above named bequest of $50,000 with a view to classifying the same; and then let us consider the gift *inter vivos* of $25,000 with reference to its effect under the terms of the will upon the legacy thus classified.

1. As to the bequest: various queries suggest themselves as to its legal characterization and effect. (a) Is it a legacy in trust or for a charitable use requiring its segregation in a fund for the specific purpose, and no other, of the establishment and maintenance of beds in conformity with the provisions of the ninth section of said will; and is the doctrine of *cy pres* applicable in the event that $50,000 or the residue thereof is too much or too little to pay for the establishment and maintenance of five beds as set forth in said provision? Or (b) is it a gift upon condition precedent or upon condition subsequent?

It is noted that by the ninth section of testatrix' will $50,000 is bequeathed to the Kapiolani Maternity Home, not for any specific purpose, but upon a named condition to be performed after the vesting of the legacy. The acceptance of the legacy carries with it an acceptance of the condition. Failure to perform the condition would defeat the legacy. No intention to create a trust with reference to matters now under discussion is shown, either expressly or by implication, in any of the provisions of

said will. "To create a trust by deed or by will the testator must fully indicate such intention by using language sufficient to sever the legal from the equitable estate, and must with certainty identify the beneficiary and the property out of which the trust is to take effect. The gift or grant of an estate upon condition or charged with some burden * * * does not create a trust." *Department of Public Works and Buildings* v. *Porter*, 327 Ill. 28, 158 N. E. 366, 370.

In *Dunne* v. *Minsor*, 312 Ill. 333, 143 N. E. 842, two testators devised a residence to a church on condition that the resident priest or officers of the church should keep and care for their graves. It was held that the wills created a condition subsequent. The reasoning of the Illinois court is applicable in part to the facts in the case at bar. Quoting from the text of the opinion: "While conditions subsequent are not favored in the law and courts incline against them in case of doubt, yet if the intention to create such an estate is clear, and the restrictions are not opposed to a settled rule of law or public policy, courts will give effect to them. * * * We are of the opinion that there is no ambiguity in the language of these wills. The testators expected to receive as the benefit of their conveyance the perpetual care of their graves and that of Peter Quirk. There was no other consideration or reason for the transfer of the property expressed in the wills, and it seems evident that it was made with the expectation that the acceptance of the devise would constitute an assurance that the one condition thereof would be met and that their graves would be perpetually cared for. The consideration was not one that can be met by a single definite act as is usual in the case of a covenant, but the service to be rendered is a continuing one, and follows the vesting of the title. The devise was accepted upon the condition named in the

will, and, with the exception of some years immediately following the death of the testators, their graves have been and at present are being kept up in accordance with the terms of the wills. While there was no right of re-entry reserved to the heirs at law of the testators by the express language of the wills, it seems clear that it was the intention of the testators that that right should be reserved to them. It is argued that to construe this as a covenant would give the right to enforce that covenant in equity. Without going into the question as to whether or not the heirs at law of the testators could establish grounds for compelling specific performance of such a covenant, it is not at all likely that any of them would attempt to do so. It might well have been within the minds of the testators or their adviser that a provision in the wills for the care of the graves as a condition to the enjoyment of the property would more readily insure the purpose desired. Nor would an action at law for the breach of the covenant, if it were such, afford an adequate remedy. It would be difficult for the heirs, who alone would be entitled to bring such action, to show damage to themselves or to any interest in the property conveyed. We are of the opinion that the language in the wills in this case created a condition subsequent and that the chancellor did not err in so holding. The decree will therefore be affirmed." See also *Bennett* v. *Humane Imp. Society,* 91 Md. 10.

In the instant case, the bequest being to a definitely named beneficiary without restriction as to use other than that imposed by law and by the charter of the legatee, the *cy pres* doctrine cannot be invoked to relieve the beneficiary of full performance of the above named condition subsequent in the event that the amount to be received is insufficient to establish and maintain five beds in conformity with the above quoted provision of

said will; and for the same reason, if the amount so to be received is more than enough to pay for the establishment and maintenance of the number of beds above named, the beneficiary cannot be required to establish and maintain more beds or to spend an amount equal to the overplus upon the same general object.

2. Under the terms of the will, what was the effect of the testatrix' ante-mortem gift of $25,000 to the Kapiolani Maternity and Gynecological Hospital?

The provisions of the will are so explicit in this particular as to exclude all resort to presumption from identity or lack of identity of purpose in legacy and ante-mortem gift. For this reason it is unnecessary for us to examine authorities on the topics of ademption and advancements. The will carries its own definition of the term "advancement." It says, "If during my lifetime and after the execution of this will I shall give to said maternity hospital said sum of fifty thousand dollars ($50,000.00), or any part thereof, such sum so given shall be considered an advancement and the amount hereby bequeathed shall be reduced by the amount of such advancement." The agreed statement of facts shows that during the lifetime of the testatrix and after the execution of her will she gave to said maternity hospital the sum of $25,000. Said statement further shows that the gift last above referred to was a contribution to the building fund of said hospital. In the circumstances above recited the purpose of the gift cannot affect its character. By express provision of the will it is an "advancement."

The conclusion thus reached is that the bequest of $50,000 was a bequest to the Kapiolani Maternity Home, subject to the condition subsequent that said beneficiary "shall establish within one year after payment of this bequest and maintain at least five (5) beds at said maternity hospital" and as further provided in section

nine of said will; and that the payment of $25,000 to the said maternity hospital during the lifetime of the testatrix was an advancement on account of said legacy, the residue now due thereon being the sum of $25,000, subject to the same condition subsequent which the beneficiary will obligate itself to perform *in toto* if it accepts said legacy.

Decree in conformity with the foregoing opinion will be signed upon presentation.

*J. V. Hodgson* (*E. C. Peters* on the briefs) for plaintiff.

*A. Withington* (*Robertson & Castle* on the brief) for defendants.