## KAPIOLANI MATERNITY AND GYNECOLOGICAL HOSPITAL *v.* ERNEST H. WODEHOUSE AND JAMES L. P. ROBINSON, EXECUTORS OF THE WILL OF MARY E. FOSTER, DECEASED, AND TRUSTEES UNDER THE WILL AND OF THE ESTATE OF MARY E. FOSTER, DECEASED.

No. 2231.

ARGUED MAY 12, 1936.　　　　　DECIDED JUNE 18, 1936.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE METZGER IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY CIRCUIT JUDGE METZGER.

This is an appeal from the decree of a judge of the first circuit, sitting at chambers, in equity, in a suit for legacy.

Mary E. Foster, a citizen and resident of this Territory, died in Honolulu on December 19, 1930, leaving a large estate for distribution under her last will, made on December 22, 1926, and a codicil thereto made June 17, 1930. The will and codicil were together admitted to probate in the first circuit on February 11, 1931. Article ninth of the will of the testatrix bequeathed to the complainant the sum of $50,000 in words and figures as follows: *"NINTH:* I give, devise and bequeath the sum of Fifty Thousand Dollars ($50,000.00), unto the Maternity Hospital known as KAPIOLANI MATERNITY HOME, of Honolulu, Territory of Hawaii. It is made a condition of this bequest that said Maternity Hospital shall establish within one year after payment of this bequest and maintain at least five (5) beds at said Maternity Hospital. These beds shall be maintained either in wards or in private rooms but shall be for the use of women in need of the medical and other care administered by the said Maternity Hospital and who are unable to pay for such care. It is made an express condition of this bequest that no woman in need of care who is unable to pay for such care shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose care the said Maternity Hospital is making no charge; and preference shall be shown women with Native Hawaiian blood in their veins. If during my lifetime, and after the execution of this Will, I shall give to said Maternity Hospital said sum of Fifty Thousand Dol-

lars ($50,000.00), or any part thereof, such sum so given shall be considered an advancement and the amount hereby bequeathed shall be reduced by the amount of such advancement."

The codicil made no change in article ninth. It specifically confirmed all unchanged articles in the will, and specifically revoked article twenty-seven therein, which article devised and bequeathed the residue of testatrix' estate, property of great value, in equal shares to the complainant and Leahi Home "for the establishment of a permanent fund for the charitable use" of these institutions "in their benevolent work, as a perpetual memorial" to the testatrix' father, mother, husband and others therein named. This article, and article ninth, above quoted, had been brought over in their exact words from a next earlier will made on February 4, 1922.

About seventeen months prior to the date of the codicil, to wit, on February 15, 1929, the testatrix, then living in Honolulu and recently theretofore having been given the report of the treasurer of the complainant for the year 1928, describing its difficulties, plans and hopes in its long struggle to build and own a new hospital plant suitably equipped to its needs, and stating that such a new hospital was then nearing completion at a cost of $153,846.90 for the building, and that funds were needed in addition to those then provided for, and that an entire wing of the building could be set aside as a memorial to a donor of additional funds, caused her check for $25,000 to be sent to the treasurer of the complainant, which check was accompanied by a letter from her business agent, Mr. Ernest H. Wodehouse, saying: "I have been instructed by Mrs. Mary E. Foster to hand you the enclosed check * * * in the sum of $25,000, this amount being her contribution to the fund being raised by the home for the completion of the new maternity hospital." The codicil made

no reference to this gift or to the bequest of $50,000. In lieu of article twenty-seven it gave the residue to the executors to hold in trust for the testatrix' sisters as long as any one of them lived and thereafter the remainder to their children, etc. On July 12, 1932, the respondents, who were the executors under the will, took over from themselves as executors the remainder of the estate of the testatrix, as trustees under the will, subject to the legacies remaining unpaid, nothing having then been paid on the bequest to complainant.

The executors and complainant holding divergent views as to the gift of $25,000 being an ademption of the legacy to that extent, and also as to the construction to be given article ninth, agreed to submit their contentions under the provisions of sections 2371 to 2374, R. L. 1925, relating to submissions on agreed statements of facts, and accordingly joined in a sworn statement of facts and on June 9, 1932, submitted thereby the issues to this court for its opinion. The agreed statement of facts and the claims of the parties are set out in full in 32 Haw. pp. 490 to 499, inclusive. This court rendered its opinion therein on August 31, 1932 (No. 2063, 32 Haw. pp. 489 to 503), holding, in effect, that the gift of February 15, 1929, to the building fund of the hospital was an advancement on account of the legacy under the provision of article ninth of the will, and that the legacy of $50,000 was bequeathed to the complainant upon conditions that created a condition subsequent, requiring that the beneficiary "shall establish within one year after payment of this bequest and maintain at least five (5) beds at said maternity hospital," and as further provided in article ninth of said will; and that $25,000 of the legacy having been paid during the lifetime of the testatrix, the residue remaining unpaid, to wit $25,000, was "subject to the same condition subsequent which the beneficiary will

obligate itself to perform *in toto* if it accepts said legacy." Decree was entered accordingly.

The complainant appealed from the decree to the United States circuit court of appeals, ninth circuit, and the case was presented there upon the agreed case submitted to this court. The circuit court of appeals handed down its decision on April 10, 1934 (No. 7026, 70 F. [2d] 793), wherein, in substance and effect, it held: (1) That whether or not the gift of February 15, 1929, should be treated as an advancement within the meaning of that term as used in the will, or as an ademption by satisfaction *pro tanto,* is entirely a question of actual intention of the donor at the time of making said gift, the burden resting on the legatee to show such intent by clear and convincing evidence. The court cited numerous authorities for this rule and approved the rule as stated in 2 Page on Wills, § 1342, as follows: "Whether a gift to a legatee operates as an ademption or not, depends upon the actual intention of the testator, as communicated to the legatee, or as would be inferred by the legatee from the circumstances under which the gift is made, if he acted as a reasonable man. The doctrine of ademption by satisfaction is intended, primarily, to give effect to the intention of the testator; and not to secure the interests of other beneficiaries as against the wishes of the testator." The court further said: "There are probative facts in the stipulation which strongly tend to overcome the effect of the statement in the will of the intention of the testatrix that subsequent gifts of a portion of 'said sum' should be treated as an advancement. These facts above stated include a statement of the circumstances under which the gift was made; a declaration of the purpose of the testatrix in making the gift, and the provisions of the codicil subsequently made. Other evidence not included in the stipulation might be even more per-

suasive." (2) That the intent of the testatrix at the time of making the gift was an essential ultimate fact, which the stipulation of facts by the parties failed to state, and in the absence of such a stipulation the court would be required to draw an inference of fact from the evidentiary facts stated in the agreement, in order to determine the ultimate fact and thus determine the controversy between the parties. This the court declined to do, holding that it would be entirely improper for it to proceed to determine factual issues upon a case submitted upon an agreed statement of fact. The court also pointed out that this view and practice were established in Hawaii, and referred to the case of *Butterfield* v. *Bon,* 12 Haw. 337, a submission upon agreed facts, wherein this court said: "We are not called on to pass upon evidence but upon the law applied to facts agreed. The parties must agree as to this fact or else produce their proofs in a proper case before a court in equity;" that where parties to an agreed case failed to stipulate as to an essential and ultimate fact, proceedings must be dismissed without prejudice, if the parties cannot agree upon stipulation as to such fact. The ninth circuit court of appeals further said: "We repeat that we are not dealing here with the intention of the parties or of the testator as manifested by a will or a conveyance, but with her intention in making a payment of money. What was said and done at the time of the payment of the money and in soliciting the same are of primary importance in determining that ultimate question of fact. * * * We would not hesitate to pass upon this question of fact if it were our duty so to do, but as we understand our duty it is to decline to pass upon a question of fact in an agreed case." (3) That "conditions subsequent" are not favored in the construction of wills; that intention to create them must clearly appear and, without a gift over after breach, a condition subse-

quent attached to a gift of personal property could not become operative; that the condition attached to the bequest required that at least five beds should be established within a year after payment, and there was no gift in case of breach, therefore a "condition subsequent" was not created and testatrix' executors could not exact acceptance of the legacy on condition that the hospital would establish and maintain five free beds. The court further said (p. 803): "The dominant purpose of the testatrix is unmistakably clear, to establish five free beds and to maintain them. There is no restriction imposed by the will upon the use of the principal for that purpose." (4) The decree of this court was reversed with instructions to permit the parties to amend the stipulation of facts to include an agreement as to the intent of the testatrix with reference to ademption at the time of her gift of $25,000, and in default thereof to dismiss that branch of the case without prejudice; the decree to direct that the balance of the legacy ($25,000) be immediately paid by the respondents to the complainant.

Pursuant to the opinion of the circuit court of appeals and to the mandate of that court, the decree of this court, entered on September 12, 1932, was vacated and set aside, and the parties having failed within the time allowed by this court to amend the stipulation of facts to include an agreement as to the intent of the testatrix with reference to ademption at the time of her gift of $25,000, that part of the case was dismissed without prejudice, and on June 27, 1934, judgment by final decree was entered against the respondents for the balance of the legacy ($25,000), with interest at the legal rate from December 19, 1931, and costs in this court and in the circuit court of appeals. The respondents promptly paid the complainant $25,000 in accord with the final decree and on November 20, 1934, the complainant filed in the equity division of the first

circuit court its bill of complaint in its suit for legacy, praying to recover from the respondents the sum of $25,000 with interest from December 19, 1931. The respondents answered timely and issues being joined upon said bill and answer the suit proceeded to trial before the circuit judge and evidence was taken on May 1 and May 17, 1935. An amended bill was filed during the trial to bring in the respondents as trustees, as well as executors.

On May 23, 1935, the judge rendered and filed his decision holding, for reasons therein stated, in favor of the complainant and against the respondents. Pursuant to the decision, a decree was entered and this appeal therefrom was taken on May 31, 1935.

The ultimate issue before the judge of the first circuit court was whether or not Mary E. Foster intended, at the time it was made, that her gift of February 15, 1929, should come under the ademption provision of article ninth of her will as an advanced payment, or intended it as a gift for a separate and distinct purpose outside of and beyond the provisions made in her will. The trial judge held in his decision that it was intended as a separate gift, and not as an ademption by satisfaction *pro tanto,* and that the complainant was entitled to recover $25,000 from the respondents as the unpaid portion of the legacy.

In the briefs and oral arguments before this court, the respondents contend that the question of the right of the complainant to receive the full sum of $50,000 without ademption is not a question of fact dependent upon the intention of Mrs. Foster when she made the gift, but a question of law involving only the interpretation of the will; that the complainant did not show in the trial, as was its burden to show by clear evidence, nor did the trial judge in his decision find, that there was a "change of intention" on the part of the testatrix "subsequent" to the

date of the will and further, they contend that no such change of intention could have effectively been made otherwise than in the manner provided by law for the making of wills.

Some authorities hold that the question of ademption is one of law rather than intention (*Ross' Executor* v. *Carpenter* [Ky.], 50 Am. Dec. 513; *Walton* v. *Walton* [N. Y. Ch.], 11 Am. Dec. 456) ; but, the better opinion is that the question of ademption is a question of intention, and this is clearly the opinion of the circuit court of appeals, which held that notwithstanding the expressed intention of the testatrix in her will, her intention with respect to the gift *inter vivos* at the time it was made, if clearly shown, is all controlling. We deem the opinion of the circuit court of appeals of the ninth circuit to be binding upon this court, and besides, it seems fundamental that a person of legal capacity is as free to dispose of as much of his property as he desires by gift during his lifetime as he is to dispose of it by legacy to be paid after his death. "Whether or not a gift or advancement to a legatee shall operate as an ademption of the legacy depends entirely upon the intention of the testator." 40 Cyc., p. 1915 (citing numerous cases).

There remains for determination only the question: Was there sufficient evidence to support the findings and decision of the trial judge and the decree based thereon and, upon the whole of the evidence, should the decree be sustained? Our answer is in the affirmative. It is clear that the testatrix could not have had her dominant purpose, as expressed in her will, to have $50,000 of her estate devoted to maintaining free beds, for "the use of women in need of the medical and other care administered by the said Maternity Hospital and who are unable to pay for such care," fulfilled if she had intended that the gift of $25,000 "to the fund being raised by the home for the

completion of the new maternity hospital" was to be treated as an ademption. There is no evidence in the record that she ever knowingly departed by word or deed from this dominant purpose, and the expressed predominant purpose of her will must be given effect. In 1929 funds were being solicited for completing a new hospital building on a new site and Mrs. Foster contributed her check for $25,000 for that specific purpose. Thereafter, by codicil to her will, she confirmed her dominant purpose to have established five or more free beds.

The respondents contend that there was but a small amount of evidence tending to show what Mrs. Foster's actual intention was when she made the gift of February 15, 1929, and that the weight of this evidence tends to show that she had not changed her mind concerning the ademption provisions in her will. They point out that her business agent, Mr. Wodehouse, caused an entry to be made under the date of the gift in a "rough cash book" kept by him showing her cash accounts, as follows: "Check 363 payable to the treasurer of Kapiolani Maternity Home, contribution to the fund required for completion of new hospital being advance payment under the terms of my will $25,000," and that Mr. Wodehouse and his secretary-bookkeeper testified that it was the custom of his office to send by mail to Mrs. Foster each week, in compliance with her request, typewritten copies of all entries made in this book, and to retain a carbon copy of such statements in the files of his office; that he further testified that Mrs. Foster had said to him at the time she gave directions for the making of the codicil on January 17, 1930, that she had treated both Kapiolani Maternity Home and Leahi Home alike, and that the Kapiolani Maternity Home people were always after her for money. They also contend that the averments contained in the agreed statement of facts, which was put in evidence by

the complainant, were admissions that could be contradicted, modified and explained, and they point out that Mr. Wodehouse, one of the respondents who entered into and signed the agreed statement, testified in the trial that at no time before he signed the statement did he have any knowledge or information that the facts stated therein were actual facts, and that at or before the time Mrs. Foster instructed him to send her check to the maternity home she had said nothing to him with reference to certain facts which were agreed upon in the statement.

The trial judge in his decision discussed these points and showed that he fully considered all the evidence and from it found as facts, among others, the following: That the complainant is a benevolent and charitable corporation without capital stock and maintained largely by public and private charitable gifts, for the special object of providing a maternity hospital where women and their offspring may receive proper care and treatment during and following childbirth; that it had established a building fund and undertaken the construction of its new hospital building in 1928 and in addition to its accumulated fund and money borrowed on its real property the trustees and friends of the institution solicited subscriptions to its building fund; that among other contributors to this fund, Mary E. Foster gave $25,000 on February 15, 1929; that there was no evidence that Mrs. Foster ever authorized the entry made by her business agent, Mr. Wodehouse, in the rough cash book, or direct evidence that it was ever brought to her attention, and he held it to be entirely irreconcilable with correspondence in reference to the donation, including that of Mr. Wodehouse, also as being contrary to the agreed statement of facts which was entered into by the respondents before the question of intent became the main issue; that the evidence conclusively showed that Mrs. Foster's gift of Feb-

ruary 15, 1929, was made for the sole purpose of supplementing the building fund, and that no part of it was used for the purposes specified in article ninth of her will; that Mrs. Foster knew the use made of the gift and acquiesced in that use, and knew that an arch over the entrance of one wing of the new hospital building was inscribed with her name and the figures 1929 and, in conclusion, found as a fact from the evidence that when the testatrix donated $25,000 to the building fund she did not intend it as an advancement, nor did she intend at any time to reduce the $50,000 bequeathed for the specific purposes named in article ninth.

We are not entirely convinced that the trial judge was justified in finding the fact that Mrs. Foster knew that an arch over the entrance of one wing of the hospital had been inscribed with her name. There was fairly strong circumstantial evidence of the fact but persons who might have testified with certain knowledge were dead and hearsay evidence was admitted.

While an appeal from a decree in equity brings the entire record up for scrutiny and review, and this court has the power to weigh evidence and make its own findings of fact, it is ever mindful that the findings of fact in the trial court, where witnesses are under examination and observation and where actions sometimes speak clearer than recorded words, are entitled to great weight and should not be overthrown unless the record is clearly convincing that they are not in accordance with the evidence and it is not of controlling importance that the trial court may have found some facts which could not be sustained by legal evidence in the record. If the record shows the decree to be correct, it will be affirmed on appeal. These principles have long been established and adopted in a long line of cases in this court.

The transcript of evidence shows that Mr. Wodehouse remembered there were occasions when Mrs. Foster complained that she had not received reports of statements showing his entries in the rough cash book, although he said that upon receiving such complaints he had given her a duplicate. No carbon copy of a verbatim statement of the cash book entries containing the entry of February 15, 1929, could be found in his office files, after search. If one was ever made, no witness testifying upon the subject knew what had become of it.

Testimony and evidence in the form of letters were introduced showing that in August, 1923, Mrs. Foster made an unsolicited gift of $5,000 to complainant, transmitted through her agent, Mr. Wodehouse, without specifying any purpose for which it was to be used, and that complainant's secretary, in acknowledging the gift, wrote Mrs. Foster on October 1, 1923, saying: "At the last meeting of the trustees, it was decided to place this amount to the credit of the building fund, and we are all looking forward to the time when this fund will have grown to an amount that will permit of erecting a suitable building which will be a credit to this worthy institution." It is definitely established that this gift was not considered by Mrs. Foster as an advancement, although the provisions of article ninth then stood in her will as article seventh in exactly the same words as when she made the gift of February 15, 1929. No evidence was produced to show that she had treated Leahi Home the same, by making any gift to it during her lifetime. At the time she made the gift to complainant, on February 15, 1929, she made other money gifts amounting to an additional $70,000, without any suggestion on her part that she intended them, or any of them, other than as outright *inter vivos* gifts.

The evidence shows, by a letter signed by the respondents as executors, addressed to the president of complainant corporation, under date of April 20, 1932, that it was the respondents who proposed by way of adjudication of the controversy between the parties that an agreed statement of facts be submitted to the supreme court of the Territory of Hawaii for its opinion; that after the agreed statement of facts was drafted it was in the hands of respondent Mr. Wodehouse for several days and its contents were the subject of communications and discussions between counsel for the respective parties during that time, and that when Mr. Wodehouse laid it before his coexecutor Mr. J. L. P. Robinson for his signature he discussed its contents and assured Mr. Robinson that it stated the facts as far as his knowledge was concerned and that it was all right for them to sign it. Mr. Wodehouse had discussed the $25,000 gift with Mrs. Foster before it was made and must have had full opportunity to investigate the truth and importance of the averments in the statement before he signed and delivered it and before he advised his coexecutor to sign it. They knew, by the terms of this stipulation, that it not only was the basis, but contained all of the facts upon which the controversy between the parties was to be submitted for final judgment. While there is much sound authority for the proposition that an agreed statement of facts when used in a subsequent trial may be attacked as to any statement therein, either by disproving or rebutting it, or by explaining it away, such admissions must stand until satisfactorily overthrown.

The statement of facts sets out, among other things: *"That on, to-wit, February 15, 1929, the testatrix, Mary E. Foster, in response to the solicitations made of her, with full knowledge of all the facts and well knowing that any moneys that she might contribute to such building fund*

*were for the exclusive purpose of defraying the cost and expenses of the erection and completion of the new maternity hospital building at the new site and would be used exclusively for that purpose and not for the establishment and/or maintenance of beds or for other furniture, fixtures or equipment to be used in said maternity hospital, made a gift to the Kapiolani Maternity and Gynecological Hospital of the sum of twenty-five thousand dollars ($25,-000.00)."* We hold that this agreed statement of facts, sworn to as it was by the president and secretary of the complainant as well as by both the respondents, has not, upon a consideration of all of the evidence, been overthrown.

We are of the opinion that the decree appealed from is sustained by ample evidence and is free of reversible error. It is therefore affirmed.

*J. V. Hodgson* (also on the brief) for complainant.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for respondents.