IN THE MATTER OF THE ESTATE OF
MARY E. FOSTER, DECEASED.

No. 2321.

ARGUED SEPTEMBER 24, 1937.          DECIDED DECEMBER 3, 1937.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE STAFFORD
IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY BANKS, J.

This is an appeal from a decree entered by the court
below ordering the executors of the will of Mary E. Foster,
deceased, to pay forthwith to the Kapiolani Maternity and
Gynecological Hospital out of the general assets of the

estate of the testatrix the sum of $4500 as compensation for professional services rendered by its counsel in connection with certain litigation that had arisen between the executors and the hospital concerning a bequest of $50,000, and in like manner to pay the additional sum of $381.57 as reimbursement for other expenditures made by the hospital in connection with the litigation.

The litigation referred to was first submitted to this court on an agreed statement of facts (*Hospital* v. *Wodehouse,* 32 Haw. 489). From there it was taken on appeal to the ninth circuit court of appeals (*Kapiolani Maternity and G. Hospital* v. *Wodehouse,* 70 F. [2d] 793). Subsequently one phase of the controversy was submitted to the circuit court of the first judicial circuit by a bill in equity and was finally brought by appeal to this court (*Hospital* v. *Wodehouse,* 33 Haw. 846).

We will first consider the questions necessary to a determination of the liability for counsel fees under the agreed statement of facts. This litigation had its origin in and was made necessary by an ambiguity in the ninth article of Mrs. Foster's will. This article is as follows: "I give, devise and bequeath the sum of fifty thousand dollars ($50,000.00) unto the maternity hospital known as Kapiolani Maternity Home, of Honolulu, Territory of Hawaii. It is made a condition of this bequest that said maternity hospital shall establish within one year after payment of this bequest and maintain at least five (5) beds at said maternity hospital. These beds shall be maintained either in wards or in private rooms but shall be for the use of women in need of the medical and other care administered by the said maternity hospital and who are unable to pay for such care. It is made an express condition of this bequest that no woman in need of care who is unable to pay for such care shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose

care the said maternity hospital is making no charge; and preference shall be shown women with native Hawaiian blood in their veins. If during my lifetime, and after the execution of this will, I shall give to said maternity hospital said sum of fifty thousand dollars ($50,000.00), or any part thereof, such sum so given shall be considered an advancement and the amount hereby bequeathed shall be reduced by the amount of such advancement."

That this article was ambiguous is indicated by the disagreement between the executors and the hospital as to its meaning and by their willingness to unite in a proceeding to have its meaning judicially ascertained. In fact so confused was the language in which the testatrix attempted to express her purpose regarding the condition upon which the bequest was to be paid to the hospital that a different and dissimilar conclusion was reached by two separate courts. (*Hospital* v. *Wodehouse,* 32 Haw. 489; *Kapiolani Maternity and G. Hospital* v. *Wodehouse, supra.*) It was held by the first of these courts that it was implicit in the language used that the executors were not authorized to pay the legacy unless and until the legatee agreed to install and perpetually maintain in the hospital five free beds for the benefit of the class of persons mentioned in the article. A contrary view was taken by the Federal court, to which the case went on appeal. It was there held that there was nothing in the language used in the article upon which to predicate the conclusion reached by the Hawaii court. The fact that a different construction was placed on the article in question by two separate courts is sufficient in itself to show that an ambiguity existed in the will of the testatrix.

In *Linn* v. *Davis,* 223 Ill. App. 503, one of the questions presented was whether a certain clause in the testator's will was so clear and unambiguous that no construction was necessary. In disposing of this question the court said: "That a construction of the will was not unnecessary is evi-

denced by the fact that the circuit court placed a construction upon it different from our construction."

The ninth article being so ambiguous as to render judicial construction necessary, it is apparent from the facts contained in the submission that the trustees were in doubt as to what disposition they were authorized under the will to make of the legacy. It is fortunate for them that they entertained this doubt. They evidently believed that the legacy should not be paid to the hospital but should remain a part of the general assets of the testatrix. If they had acted on this belief instead of taking the precaution to seek judicial advice it would have been a mistaken use of the legacy.

It is contended by the executors that the submission on agreed facts was merely a substitute for an action for the recovery of a legacy and bore no resemblance to a suit in equity for the construction of a will and for this reason the fees of counsel employed by the hospital should be paid out of the legacy and not imposed upon the general assets of Mrs. Foster's estate. We think the conclusion is not based on a sound hypothesis. In other words the submission was analogous to a bill in equity for the construction of a will under the terms of which the executors were uncertain of their duties. In ascertaining the nature of a judicial proceeding it is often necessary to look beyond its mere nomenclature and determine its quality by the purpose sought to be accomplished.

This view is supported in *Evans* v. *Garvie,* 23 Haw. 694, where there was likewise a submission on agreed facts. According to the facts agreed upon Annie Garvie Evans established a trust fund which included twenty-eight shares of the capital stock of the Oahu Railway and Land Company and eighty-five shares of the capital stock of the Oahu Sugar Company, Limited. The Bishop Trust Company, Limited, was named as trustee of this trust fund. Under

the terms of the trust the income was to be paid to Mrs. Evans until her son, James Garvie, arrived at the age of twenty-one years, at which time one-half of the corpus of the estate was to go to James, the other one-half to remain as a trust fund for Mrs. Evans. Subsequent to the creation of the trust stock dividends were declared by the Oahu Railway and Land Company and the Oahu Sugar Company, Limited. A controversy arose between Mrs. Evans and her son concerning the apportionment of these dividends under the provisions of the trust instrument. The trustee was uncertain as to what the apportionment should be and resort was had by all parties to this court upon agreed facts. In speaking of the nature of this proceeding the court said: "We think the case, though it took the form of a submission without action upon agreed facts, should be regarded in the same light as if the trustee had filed a bill for instructions. The statement of facts set forth the conflicting claims of the mother and the son, and that the trustee was uncertain in respect to its duty as to what apportionment, if any, should be made of the stock dividends as between the parties. * * * It was a question which the trustee could properly have submitted to a court with a prayer to be instructed as to its duty. The submission of the matter to this court was, therefore, a proceeding for the benefit of the estate and in the interests of all the parties concerned."

The executors of Mrs. Foster's will might likewise with equal propriety have brought a bill in equity for instructions regarding the disposition they should make of the bequest to the maternity hospital. We see no substantial reason for treating the two submissions differently. The nature of the submission being similar to a bill for instructions, the question remains whether the expense of the litigation should be borne by the general estate of the testatrix or should be paid out of the legacy. The answer to this question depends somewhat on the nature of the difficulty

sought to be composed and on its origin. In the case with which we are dealing the difficulty, as we have seen, arose out of a lack of clarity in the will of the testatrix. Under these circumstances it is not only in accordance with natural justice that the expense necessary to the removal of the difficulty should be borne by the estate of the testatrix but is also consistent with the weight of judicial precedent.

The general rule on the subject is stated in 2 Perry on Trusts (7th ed.) § 903a as follows: "It is sometimes important to determine out of what fund in the hands of executors or trustees the costs of a suit are to be paid. The general rule is, that when a testator or settlor has expressed himself so ambiguously in relation to the disposition of his estate, or of any part of it, that it is necessary for the executors or trustees to apply to a court of equity for the construction of the instrument of trust, and for instructions and directions, the costs of all necessary parties shall be paid out of the general assets; and these are generally the residuary assets; for the costs of executing the will and of administering the trust are among the general expenses of settling an estate, and must be paid before anything can be distributed to residuary legatees. One reason of the rule is, that in the case of specific legacies, the legatee is entitled to the amount given if the estate is sufficient for the purpose; and to charge any cost upon the portion of any one legatee, or of any class of legatees, would be to change the proportion fixed by the testator. And further, if the testator or settlor has himself created the difficulty by the form of his expressions, it is equitable that his general estate should pay for clearing up the doubts raised by his own language."

This rule has also been recognized in this jurisdiction in *Estate of Brown,* 24 Haw. 573, where the court said (p. 577) : "The general rule is that where the testator has expressed his intention so ambiguously as to create a difficulty which makes it necessary to go into a court of chan-

cery to get a construction of the will, and to remove the difficulty, the costs of litigation, including reasonable attorney's fees to all necessary parties, must be borne by the estate and the general residue is the primary fund for the payment of such costs."

In *Straw* v. *Societies,* 67 Me. 493, a bill in equity was brought by an executor asking the construction of a will. The testatrix had failed to describe with reasonable certainty the legatee who was to take a charitable bequest. Four claimants to this bequest became parties defendant. The court construed the clause that was involved in favor of one of these claimants. Speaking on the question of costs the court said : "The costs of this suit, including counsel fees on both sides, are to be paid from the general assets of the estate; as having been occasioned by the want of care and precaution on the part of the testatrix herself. The ambiguity in her will made the suit necessary."

In *Deane* v. *Home for Aged Colored Women,* 111 Mass. 132, a bill in equity was brought by the executors praying for instructions as to the disposal of certain legacies. Several charitable organizations joined as parties defendant, each claiming an interest in the legacies.

After the court had construed the will and disposed of the conflicting claims thereunder counsel for the executor contended that the costs should be taken out of the legacies in dispute. The court, speaking through Mr. Chief Justice Chapman, disposed of this contention in the following language: "We must regard it as a general rule established by the authorities cited by the defendants' counsel that whenever a testator has expressed himself so ambiguously as to make it necessary for his executors to come to this court, the costs should be paid out of the general assets. This case comes within the general rule."

In *Alford* v. *Bennet,* 279 Ill. 375, a bill was filed by certain devisees praying for the construction of an ambiguous

will. The court construed the ambiguous clause in favor of the devisees and charged the expenses of the litigation against the estate, using the following language: "Counsel for appellants also insists that the court erred as to the solicitor's and guardian *ad litem's* fees. This court has repeatedly held that where a testator has expressed himself so ambiguously as to make it necessary or advisable to go into a court of chancery to obtain a construction of the will it is proper to allow the costs and solicitor's fees to be paid out of the estate."

*McCormick* v. *Hall,* 337 Ill. 232, was also a bill in equity instituted by a devisee, the widow of the testator, for the construction of a particular clause in a will. The minor children of the testator were the only other beneficiaries under the will. Counsel for the minors contended that the fees of the widow's solicitors should be paid by her and not out of the general assets of the estate. Speaking of this contention the court said: "The position of the appellees is that such fees can be allowed and paid out of the assets of the estate only where a trust is involved in the will sought to be construed. The rule is not so limited. Where a testator has expressed his intention in his will so ambiguously that it becomes necessary to prosecute a suit in chancery in order to obtain a construction of the will, the reasonable fees of the solicitors for the complainant should be paid from the assets of his estate even though a trust is not involved in the will sought to be construed. * * * The ambiguity of the will in this case is such that a construction of the will is clearly necessary in order to determine the interests of the beneficiaries thereunder. The court should have allowed to the appellant the reasonable fees of her solicitors in these proceedings, to be paid out of the assets of the estate."

In *Sawyer* v. *Baldwin,* 20 Pick. (Mass.) 378, a bill was filed to recover a particular legacy, the suit being made

necessary by the existence of an ambiguity in the will of the testator. The court construed the will and ordered the trustees to pay over the fund in controversy to one of the claimants; then in charging the expenses of the litigation against the whole estate it said: "The expenses of this suit stand upon the same ground as the general expenses of administration. The testator intended to make an apportionment among the objects of his bounty, of his property, after paying the expenses of settling his estate. To charge this cost upon the portion of any one or any class of the legatees, would be to change the proportions fixed by the testator himself. There is no reason why the expense of removing an ambiguity created by himself, should fall upon any one of the legatees rather than the others. It must be a general charge upon the whole estate." (See also *Singer v. Taylor,* 91 Kan. 190; *Moore* v. *Alden,* 80 Me. 301; *Eckford* v. *Eckford,* 53 N. W. [Iowa] 345; *Ingraham* v. *Ingraham,* 48 N. E. [Ill.] 561; *Jacobus' Executor* v. *Jacobus,* 20 N. J. Eq. 49, 54; *Morse* v. *Stearns,* 131 Mass. 389; *Guerin* v. *Guerin,* 270 Ill. 239.)

It is contended by the appellants that counsel fees should not be imposed upon the general estate of the testatrix for the reason that the litigation in connection with which the services of counsel were rendered, even though it arose out of an ambiguity in the will, was of no benefit to the estate. *Wodehouse* v. *Robinson,* 27 Haw. 602, is cited in support of this contention. In that case the income which was the subject of the controversy was payable out of a particular fund created by the will of the testatrix and not out of her general estate. Her general estate therefore was in no way affected by the suit. She had died many years before its institution and the administration of her estate had long since been settled. The fund over which the controversy arose had been severed from her estate and was administered separately from it. The court, speaking on the sub-

ject of the liability for the expense of the litigation, said : "The suit affected but a particular fund. Only the parties affected by the determination of the disposition of that fund were made parties to the suit. Under the circumstances the fund should bear the expenses of the suit."

Under Mrs. Foster's will the legacy was obviously payable out of her general estate and not out of any particular fund set apart by her for that purpose. Her general estate was therefore directly involved in the litigation. Not until the quarrel between the parties regarding the construction and interpretation of the ninth article of the will was composed by judicial decree were they apprised of what disposition should be made of the legacy. Not until then could the executors of the will safely discharge their duties regarding the legacy.

Under these conditions it cannot be said that the submission on agreed facts was solely for the benefit of the hospital and not at all for the advantage of the general estate. It was an advantage to the latter to have the executors authoritatively advised how to proceed with the disposal of the legacy.

Since the general estate of the testatrix was affected by the litigation and the legacy was payable out of such estate the rule which governed the imposition of counsel fees in the *Wodehouse* case is inapplicable. The liability for such fees does, however, come within another rule announced in that case, namely, that "where the suit affects the corpus it is reasonable and proper that the corpus should bear such expenses."

The suit in equity to which we have made earlier reference was brought by the hospital for the purpose of having a judicial determination of its right under the will of Mary E. Foster to the sum of $25,000, which was a part of the bequest of $50,000.

It appeared from the submission on agreed facts, which

submission was received in evidence at the trial of the equity suit, that Mrs. Foster, subsequent to the execution of her will and prior to her death, gave to the hospital the sum of $25,000 and that at the time she made the gift she knew that it was a contribution to a fund to be used exclusively for the erection of a new hospital building and was not to be used for the installation and maintenance of free beds, which was the purpose for which the bequest of $50,000 was made.

It was contended by the executors that it was implicit in the language used in the ninth article of the will that an *inter vivos* gift to the hospital for any purpose would be an advancement upon the legacy of $50,000. The portion of the article referred to is as follows: "If during my lifetime, and after the execution of this will, I shall give to said maternity hospital said sum of fifty thousand dollars ($50,-000.00) or any part thereof, such sum so given shall be considered an advancement and the amount hereby bequeathed shall be reduced by the amount of such advancement."

It was contended by the hospital that the language above quoted did not justify the construction placed upon it by the executors but on the contrary it should be construed to mean that only an *inter vivos* gift made for the purpose for which the bequest of $50,000 was made, namely, the installation and maintenance of free beds, should be considered an advancement upon the legacy.

It is obvious from these conflicting contentions that in order to determine the rights of the parties a judicial construction of that portion of the ninth article of the will above quoted, in which the intention of the testatrix is not stated with precision, was necessary.

That a construction was necessary is also definitely indicated by the fact that conflicting opinions were expressed by different courts. It was held by this court in *Hospital* v. *Wodehouse*, 32 Haw. 489, that the *inter vivos* gift of $25,000

was under the terms of the will of the testatrix an advancement upon the bequest. Speaking through Mr. Justice Parsons the court said (p. 502) : "The provisions of the will are so explicit in this particular as to exclude all resort to presumption from identity or lack of identity of purpose in legacy and ante-mortem gift. For this reason it is unnecessary for us to examine authorities on the topics of ademption and advancements. The will carries its own definition of the term 'advancement.' "

In the appeal to the Federal court already mentioned that tribunal, for reasons expressed in its opinion, declined to pass on the effect of the gift upon the legacy and remanded the case with instructions regarding further procedure. As a result the controversy was renewed by the suit in equity. It was held by the circuit court of the first judicial circuit of the Territory in the equity case that the gift was by the very terms of the will not an advancement upon the bequest. On appeal to this court (*Hospital* v. *Wodehouse*, 33 Haw. 846), as we shall presently see, a similar view was taken.

It is apparent from the written decision of the circuit judge that he based his conclusion that the *inter vivos* gift was not an advancement solely upon the construction he placed upon the ambiguous language used by the testatrix in her will. In his decision he said : "There can be no question but that the testatrix had in mind primarily a desire to benefit a certain class of women. The article of the will (Ninth) clearly shows in the condition attached to the $50,000 bequest that it was for a particular purpose, namely, to 'establish within one year after payment of this bequest and *maintain* at least five beds at said Maternity Hospital. These beds shall be maintained either in wards or in private rooms but shall be *for the use of women in need of* the medical and other care administered by the said Maternity Hospital and who are unable to pay for such

care. It is made an express condition of this bequest that no woman in need of care who is unable to pay for such care shall be refused the use of one of such beds unless all of such beds are already occupied by patients for whose care the said Maternity Hospital is making no charge; and preference shall be shown women with Native Hawaiian blood in their veins.' The foregoing language clearly shows the intention of the testatrix to bequeath $50,000 for a particular purpose. * * * It has been argued that the language of the last clause of the ninth paragraph of said will indicates an intention on the part of the testatrix to credit the money, advanced for an entirely different purpose, on this bequest. Had such been her intention it would have been easy for the draftsman to have expressed it in terms which could not be misconstrued. The language there used is 'If during my lifetime, and after the execution of this will, I shall give to said Maternity Hospital said sum of Fifty Thousand Dollars or any part thereof, such sum so given shall be considered an advancement * * *.' 'Said sum' refers to the Fifty Thousand Dollars to be given for the purpose of maintaining five beds as set forth in the preceding paragraphs. 'So given' again refers to the same purpose. This conclusion is fortified by the use of the word 'advancement', which indicates that she referred in this clause to any money that might be advanced for the purpose theretofore set out."

The appellate court, similarly to the circuit judge, based its conclusion regarding the effect of the inter vivos gift upon its construction of the will. Speaking on this subject the court said : "It is clear that the testatrix could not have had her dominant purpose, as expressed in her will, to have $50,000 of her estate devoted to maintaining free beds, for 'the use of women in need of the medical and other care administered by the said Maternity Hospital and who are unable to pay for such care,' fulfilled if she had intended

that the gift of $25,000 'to the fund being raised by the home for the completion of the new maternity hospital' was to be treated as an ademption. There is no evidence in the record that she ever knowingly departed by word or deed from this dominant purpose, and the expressed predominant purpose of her will must be given effect."

We think for the reasons already given that the rule regarding the payment of counsel fees, which is applicable to suits in equity for the construction of an ambiguity in a will, should be applied to the equity suit as well as to the case that was submitted on an agreed statement of facts.

It is also contended by the executors that certain expenditures made by the hospital including premiums on appeal bonds and costs of printing briefs in the ninth circuit court of appeals and certain other disbursements made in connection with the litigation should be borne by the hospital and not by the general estate of the testatrix. We are unable to agree with this contention. These expenditures were just as necessary to a determination of the controversy as were the fees of counsel and liability for them is governed by the same rule.

The decree appealed from is affirmed.

*A. G. M. Robertson* (Robertson, Castle & Anthony on the briefs) for appellants.

*J. V. Hodgson* (also on the briefs) for appellee.